[No. B097763. Second Dist., Div. Five. Feb. 5, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
ELIO CHINCHILLA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

COUNSEL

Sylvia Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert Carl Schneider and Thomas W. Casparian, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GODOY PEREZ, J.**—Defendant and appellant Elio Chinchilla appeals from the judgment entered following a jury trial which resulted in his conviction of assault with a firearm, multiple counts of assault with a firearm upon a peace officer and attempted murder. He contends there was insufficient evidence of intent to kill to support the attempted murder convictions as to two different victims and that the jury instruction given incorrectly defined reasonable doubt. After review, we affirm the judgment. In the published portion of this opinion, we hold that intent to kill two different victims can be inferred from evidence that the defendant fired a single shot at the two victims, both of whom were visible to the defendant.

### PROCEDURAL BACKGROUND

Defendant was charged by information with assault with a firearm upon Roberto Guzman (Pen. Code, § 245, subd. (a)(2)) (count 1); attempted premeditated murder of Gregory Clark (Pen. Code, §§ 664, 187, subd. (a)) (count 2); assault with a firearm upon peace officer Gregory Clark (Pen. Code, § 245, subd. (d)(1)) (count 3); attempted premeditated murder of Scott Peterson (Pen. Code, §§ 664, 187, subd. (a)) (count 4); assault with a firearm upon peace officer Scott Peterson (Pen. Code, § 245, subd. (d)(1)) (count 5);

attempted premeditated murder of Kenneth Meisels (Pen. Code, §§ 664, 187, subd. (a)) (count 6); assault with a firearm upon peace officer Kenneth Meisels (Pen. Code, § 245, subd. (d)(1)) (count 7); attempted premeditated murder of Sandra Silofau[1] (Pen. Code, §§ 664, 187, subd. (a)) (count 8); and assault with a firearm upon peace officer Sandra Silofau (Pen. Code, § 245, subd. (d)(1)) (count 9). As to each count it was further alleged that he personally used a gun. (Pen. Code, § 12022.5, subd. (a)(1).) After a jury trial, defendant was convicted of assault with a firearm (count 1), assault with a firearm upon a police officer (counts 3, 5, 7, and 9), and attempted murder (counts 2, 4, 6, and 8). The jury was unable to reach a unanimous decision as to the allegation that the attempted murders were premeditated and the trial court declared a mistrial as to that allegation. The jury found true the allegation, as to each count, that defendant personally used a gun.

Defendant was sentenced to a total of twenty-two years in prison, comprised of the nine-year high term for attempted murder on count 2, plus a consecutive middle term of two years and four months for attempted murder on counts 4, 6, and 8, plus a consecutive middle term of one year for assault with a firearm on count 1, plus a consecutive five years for the gun use (Pen. Code, § 12022.5, subd. (a)(1)). In a nunc pro tunc order, defendant was additionally sentenced to the midterm of three years on counts 3, 5, 7 and 9, which term was stayed pursuant to Penal Code section 654.

## FACTS

Viewed in accordance with the usual rules on appeal (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established that Roberto Guzman bought and paid for a car from defendant several months before the occurrence of the incidents out of which the charges herein arose. On July 25, 1992, Guzman parked this car in front of the market where he worked.

When Guzman and a coworker went outside the market to deposit the trash about 10 p.m. that night, Guzman was told that someone was in his car. Going to his car, Guzman discovered defendant sitting inside of it. When Guzman asked defendant what he was doing in the car, defendant got out of the car and walked away. Guzman called the police. Between 15 and 30 minutes later, Guzman saw defendant at some pay phones near the market. Defendant appeared to be intoxicated and said to Guzman, " '[h]ey, look.

---

[1]Although referred to as "Sandra Jackson" in counts 8 and 9 of the information, Silofau is referred to as "Sandra (Jackson) Silofau" in the verdict form for counts 8 and 9. As a witness at trial, she identified herself as "Sandra Silofau." Apparently, she changed her name sometime after the information was filed. We refer to her in this opinion as "Silofau."

Are you going to give me the money?' " Defendant then lifted his shirt and showed Guzman a gun. Guzman ran back into the store when he saw the gun. As Guzman ran, defendant fired one shot at him. Guzman hid behind a trailer.

Police Officers Gregory Clark and Scott Peterson responded to a report of a shooting at the market that night. As he pulled into the parking lot, Clark observed Guzman's car parked in a stall in front of the market. As Clark got out of the patrol car, Guzman ran up to him, pointed at defendant, and said, " '[t]hat's him.' " When Clark noticed that defendant was carrying a gun in his right hand, Clark took cover behind the patrol car. Clark instructed defendant to put the gun down and called for backup.

Defendant disregarded Clark's instructions and continued walking. Officers Kenneth Meisels and Sandra Silofau arrived on the scene at about this time. Meisels parked their car in the middle of the street, got out of the car holding a shotgun and yelled at defendant to drop his gun. Defendant continued to ignore the officers' instructions and began to make waving motions with his left hand. He then ran around a restaurant located at the corner of the parking lot. As Clark acted to contain the area, he spotted defendant behind a large green electrical box. Clark was about 15 to 20 feet away when he saw a gun come up from the around the corner of the electrical box, heard two shots and saw two muzzle flashes. Clark recognized the gun from which the shots came as the gun he had seen defendant holding earlier.

Meanwhile, Meisels and Silofau had run to another corner of the building. After hearing two shots fired from the rear of the building, they heard Clark yell into his radio that he had been fired upon. Meisels was crouched down facing the direction in which defendant was believed to be located and Silofau was crouched down behind and "just above" him when defendant backed into Meisels's field of vision, turned and fired one shot towards Meisels and Silofau. Meisels and Silofau both saw the muzzle flash. Meisels returned fire once and hit defendant in the head. As he fired, Meisels fell backward. Thinking Meisels had been shot, Silofau dragged him to the corner before she went down the walkway with her gun drawn. There, she observed defendant lying facedown in the dirt. Defendant was moving and still had a gun in his hand. Silofau waited for defendant to fire again, but Officer Cale came up to defendant and kicked the gun out of his hand, then handcuffed him. Silofau and Cale placed defendant's gun in the trunk of Cale's patrol car.

After defendant was transported by paramedics, Silofau and the other officers at the scene began collecting evidence. Silofau recovered the bullet

defendant had fired at her and Meisels. At the hospital to which defendant had been transported, Sergeant Lew Gosnell retrieved defendant's clothing. In his pants pocket, Gosnell found a set of keys and 13 live .38-caliber rounds. One of the keys was later found to open the door lock of Guzman's car, but none of them fit the ignition.

In defense, forensic toxicologist Alan Keltz testified that defendant's blood-alcohol level was tested at .17 percent that night. According to Keltz, a person with a blood-alcohol level of .17 percent would be expected to show some loss of critical judgment and impairment of perception, memory and comprehension.

DISCUSSION

## I.  *Sufficiency of the evidence*

Defendant contends the conviction of attempted murder of Sandra Silofau (count 8), must be reversed because the evidence was insufficient. He argues the evidence established that defendant fired a single bullet at Kenneth Meisels and Sandra Silofau, and that a single shot cannot support attempted murder convictions as to both Silofau (count 8) and Meisels (count 6), because the doctrine of transferred intent does not apply. We agree that the doctrine of transferred intent is inapplicable to the facts of this case, but conclude that it was not, in fact, applied here and that the evidence is sufficient to support the verdict.

"[T]he transferred intent doctrine is applied to impose criminal liability—which otherwise could not be imposed—if a defendant attempts to kill one person but by *mistake* or inadvertence kills someone else. [Citation.]" (*People* v. *Hayden* (1994) 22 Cal.App.4th 48, 57 [27 Cal.Rptr.2d 127], italics in original; see also *People* v. *Sears* (1970) 2 Cal.3d 180, 189 [84 Cal.Rptr. 711, 465 P.2d 847] [". . . if a person purposely and of his deliberate and premeditated malice attempts to kill one person but by mistake and inadvertence kills another instead, the law transfers the intent and the homicide so committed is murder of the first degree. [Citations.]"].) It has been held inapplicable to convict a defendant of two or more attempted murders resulting from a single act by which the defendant intended to kill only one person. (*People* v. *Czahara* (1988) 203 Cal.App.3d 1468, 1474 [250 Cal.Rptr. 836].) In *Czahara*, the court explained: "[W]here a single act is alleged to be an attempt on two persons' lives, the intent to kill should be evaluated independently as to each victim, and the jury should not be instructed to transfer intent from one to another." (*Id.* at p. 1475.)

Here, the jury was instructed in pertinent part as follows: "[Defendant is accused in [count[s] . . . 6 and 8 of] the information of having committed

the crime of attempt to commit murder . . . . [¶] . . . [¶] In order to prove such crime, each of the following elements must be proved; [¶] . . . [¶] 2. The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being. [¶] . . . [A]cts of a person who intends to kill another person will constitute an attempt where those acts clearly indicate a certain, unambiguous intent to kill. Such acts must be an immediate step in the present execution of the killing, the progress of which would be completed unless interrupted by some circumstances not intended in the original design. [CALJIC No. 8.66.]" The jury was *not* given CALJIC No. 8.65. That instruction is given to explain the concept of transferred intent and reads: "When one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed." Moreover, no transferred intent theory was argued to the jury.

Thus, defendant's reliance on various transferred intent cases[2] to support his assertion that the "Single Shot Fired At Officers Meisels And Silofau Could Not Support Separate Attempts To Murder Both Officers," is misplaced. Each of those cases is factually distinguishable from the case at bar because in each, the jury was given a transferred intent instruction such as CALJIC No. 8.65. Since no such instruction was given in this case, the jury was properly instructed to independently evaluate whether defendant possessed the requisite intent to kill vis-à-vis both Meisels and Silofau. ■ We conclude, moreover, that the evidence supports the jury's conclusion that defendant possessed the requisite intent.

■ " 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People* v. *Ochoa, supra,* 6 Cal.4th at p.

---

[2] These cases include *People* v. *Czahara, supra,* 203 Cal.App.3d at page 1475; *People* v. *Calderon* (1991) 232 Cal.App.3d 930, 935-937 [283 Cal.Rptr. 833]; and *People* v. *Birreuta* (1984) 162 Cal.App.3d 454, 460 [208 Cal.Rptr. 635].

1206; see also *People* v. *McLead* (1990) 225 Cal.App.3d 906, 917 [276 Cal.Rptr. 187].)

Penal Code section 187, subdivision (a) provides: "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." ■ In order to prove an attempted murder charge, there must be sufficient evidence of the intent to commit the murder plus a direct but ineffectual act toward its commission. (*People* v. *Morales* (1992) 5 Cal.App.4th 917, 925 [7 Cal.Rptr.2d 358].) Although malice may be express or implied with respect to a charge of murder, implied malice is an insufficient basis upon which to sustain a charge of attempted murder because specific intent is a requisite element of such a charge. (*People* v. *Lashley* (1991) 1 Cal.App.4th 938, 945, fn. 4 [2 Cal.Rptr.2d 629].) Thus, to sustain a charge of attempted murder, the evidence must demonstrate a deliberate intention unlawfully to kill a fellow human being. (Cf. Pen. Code, § 188.)

There is rarely direct evidence of a defendant's intent. Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions. (*People* v. *Lashley*, *supra*, 1 Cal.App.4th at p. 946.) The act of firing toward a victim at a close, but not point blank, range "in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill . . . ." (*Id.* at p. 945.) "The fact that the shooter may have fired only once and then abandoned his efforts out of necessity or fear does not compel the conclusion that he lacked the animus to kill in the first instance. Nor does the fact that the victim may have escaped death because of the shooter's poor marksmanship necessarily establish a less culpable state of mind." (*Id.* at p. 945.)

■ At oral argument, defense appellate counsel conceded that one shot could support a conviction on two counts of attempted murder if there was evidence that the shooter saw both victims. Counsel maintained, however, that there was no such evidence in the case at bar. We disagree. From Silofau's testimony that she was crouched behind but above Meisels, it is reasonable to infer that she was visible to defendant, who was close enough that both officers could see the muzzle flash when he fired at them.

Like the People, we have been unable to find a California case which holds that the firing of a single bullet in the direction of two people is sufficient to support convictions on two counts of attempted murder. We have, however, reviewed the out-of-state authorities cited by the People.[3] We find the reasoning of those cases persuasive and adopt that reasoning

[3]We have reviewed the following cases cited by the People: *State* v. *Sharp* (1995) 283 N.J.Super. 296 [661 A.2d 1297]; *People* v. *Bigsby* (1977) 52 Ill.App.3d 277 [9 Ill.Dec. 924,

here. Where a defendant fires at two officers, one of whom is crouched in front of the other, the defendant endangers the lives of both officers and a reasonable jury could infer from this that the defendant intended to kill both.

II.  *Reasonable doubt**

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.                    .

Grignon, Acting P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 30, 1997. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

367 N.E.2d 358]; and *People* v. *Mimms* (1976) 40 Ill.App.3d 942 [353 N.E.2d 186]; as well as the Ninth Circuit case of *People of Territory of Guam* v. *Quichocho* (9th Cir. 1992) 973 F.2d 723.
   *See footnote, *ante,* page 683.