Filed 3/6/13  P. v. Marquez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055899 |
| v. | (Super.Ct.No. RIF151482) |
| FILIBERTO MARQUEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Patrick F. Magers, Judge.

Affirmed.

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Filiberto Marquez[1] of multiple felonies and enhancements arising out of a robbery, including attempted murder. He received a total sentence of 29 years in state prison. On this appeal, his sole contention is that the evidence was insufficient to show that he had the specific intent to kill. We disagree and affirm the judgment.

STATEMENT OF FACTS

Due to the nature of the issues in this case, we limit our recital of the facts to those relevant to the conviction for attempted murder.

The victim testified that on July 10, 2009, he was working at a skate and surf store in Riverside when two men entered the store and began examining the clothing racks. After a few minutes, the men approached the cash register carrying clothing. Defendant drew a gun and pointed it at the victim. Defendant then demanded money and warned the victim not to try and summon help. Defendant also told the victim to give him his cell phone. When the victim hesitated, defendant fired a shot into the wall.

As the victim obtained the money from the register, defendant and his coperpetrator continued to threaten him, for example, saying that they knew where the victim lived and where his children went to school. After he handed money to the coperpetrator, the latter ran out the door shouting to defendant, "Blast these fools. Let's go." Meanwhile, defendant was also moving toward the door, still pointing the gun at the victim. As defendant then ran out after his coperpetrator, the victim followed and jumped

---

[1] In correspondence to the court, defendant spells his name "Feliberto."

into the company van, yelling at a nearby hotdog vendor to call the police. The van was marked with the store name.

Shortly thereafter, the victim noticed a white Suburban and saw defendant roll down the window, with the gun still in his hand. When defendant pointed it at him, the victim put his vehicle into reverse and began to back up. The Suburban followed and the victim heard four or five shots, two of which hit his windshield. At this point, the victim ducked down to protect himself. The Suburban drove past the victim to get out of the street (which ended in a cul-de-sac) and no further shots were fired.

A second witness testified that he saw two men running around the corner from the skate and surf store; one of them was carrying clothing and the other had a gun in his hand. The man with the gun got into the driver's seat of a vehicle, but before the vehicle could drive off, the company van came down the street. It stopped "not exactly nose-to-nose . . . but they were fairly close to one another." The witness saw the driver stick his arm out the window and begin to shoot at the van. The witness also testified that four or five shots were fired, directly at the van "as near as I could tell."

DISCUSSION

Defendant argues that the conviction for attempted murder violated his federal due process rights because it was not supported by substantial evidence. He asserts that because he was able to simply drive past the victim, there was no need to kill the latter to facilitate his escape. Defendant also asserts that because he did not in fact heed his coperpetrator's encouragement to "[b]last these fools" as they left the store, there could

3

not have been substantial evidence that he intended to kill the victim when he *did* shoot at the latter's vehicle. We disagree.

First, we note that the fact that one does not have the intent to kill another at Point A in time is of little, if any, relevance to the question of whether the actor has the intent to kill at Point B in time. We also note that although defendant argues that he had the same motive at all times—to dissuade the victim from assisting law enforcement—this statement is true, but incomplete. By the time defendant actually shot at the victim, it had become apparent that verbal threats and the mere discharge of the gun were not sufficient to frighten the victim into silence or inaction. Thus, although his motive may have remained the same, defendant could well have decided to resort to murder to accomplish his aims.[2]

We are also not persuaded that the fact that defendant did not continue to shoot as he drove past the company van and came directly alongside is particularly probative. By that time, the victim had ducked down, and defendant could have believed that the victim had been hit or might simply have been unable to see him.

---

[2] Defendant's argument that he did not need to kill the victim in order to escape because his route was clear, does not assist him. Under those facts, he did not need to shoot at all, so his motive for doing so may be inferred to have been more sinister.

Defendant also complains that the prosecutor suggested to the jury that the victim only survived because defendant was a bad shot. He points out that there was no evidence as to his shooting prowess either way. Apparently, he thinks the jury should have inferred that he was actually a crack shot and intentionally missed the victim. The position is equally unsupported by direct evidence, and the jury was entitled to choose between the options based upon all the evidence before it.

4

To this point, we have addressed defendant's speculations as to what the evidence *could* have been interpreted to show. We now turn to a consideration of what the jury decided it *did* show and whether the evidence before the jury was legally adequate to establish that defendant had the specific intent to kill the victim when he fired into the company van.

It is undisputed that an element of attempted murder is the specific intent to kill. (*People v. Superior Court (Decker)* (2007) 41 Cal.4th 1, 7.)[3]  In other words, in order to be convicted of attempted murder, a defendant must harbor express malice; implied malice will not suffice. (*People v. Smith* (2005) 37 Cal.4th 733, 751.)  In this context, this means that a defendant must at least hope for the result of death. (*Ibid*., citing *People v. Davenport* (1985) 41 Cal.3d 247, 262.)

Of course, in many or even most cases, a defendant's intent must be determined from the circumstances of the attempt, including the defendant's actions. (*People v. Lashley* (1991) 1 Cal.App.4th 938, 946.)  It has repeatedly been held that the act of firing toward a victim at close range, or any act of applying a lethal weapon with lethal force, will support the jury's inference of an intent to kill. (*People v. Arias* (1996) 13 Cal.4th 92, 162; *People v. Lashley*, at p. 945.)

In determining whether the conviction should be upheld, our task is to determine whether *any* reasonable trier of fact could have decided that defendant intended to kill the victim. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Gonzalez* (2005)

---

[3]  The jury found that the attempt in this case was not premeditated.

126 Cal.App.4th 1539, 1552.) In other words, the conviction must be based upon substantial evidence—evidence that is reasonable, credible, and of solid value. (*People v. Cravens* (2012) 53 Cal.4th 500, 508; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) The fact that the evidence might also reasonably lead to a contrary, or different, conclusion does not require reversal of the judgment. (*Cravens,* at p. 508.)

Although proof of a motive to kill is not required to establish intent to kill, it is often probative of intent. (*People v. Smith*, *supra*, 37 Cal.4th at p. 741.) Here, as we have discussed, defendant's conduct throughout the incident constituted clear evidence of his concern to dissuade the victim from cooperating with law enforcement. He fired his gun once while inside the store, and then he threatened the victim and the victim's family with harm unless the victim kept quiet. A reasonable jury could easily have concluded that when the victim courageously pursued the robbers, defendant concluded that he would attempt to eliminate the victim/witness.[4]

Furthermore, defendant's particular conduct in shooting at the victim's vehicle was also consistent with intent to kill. In *People v. Smith*, *supra*, 37 Cal.4th at page 742, the defendant fired into the back window of a vehicle in which a woman with whom he had a dispute was seated. The shooting was at a distance of about one car length. The Supreme Court found this sufficient to support a conviction of the attempted murder not only of the woman, but of her boyfriend and child, also known by the defendant to be in

---

[4] Although another employee was in the store at the time of the robbery, defendant could have believed that if he shot and killed the victim, she would be frightened into silence as well.

the car.  In this case, although the two vehicles "were not exactly nose-to-nose" according to the second witness, they were "fairly close to one another."  While in *Smith* the defendant only fired once into the victims' vehicle (*id.* at p. 742), in this case, defendant shot at the company van four or five times, with two of the bullets going directly toward the victim and penetrating the windshield of the van.  Under the rationale of the cases discussed above, defendant's use of a lethal weapon, at relatively close range and in a manner that would have inflicted a fatal injury had the bullet been on target, supported the jury's inference of intent to kill.  (See also *People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690.)  Taken together, the circumstances of the shooting and the motive to eliminate the victim/witness constituted constitutionally sufficient evidence to support the conviction.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

7