Filed 5/1/13  P. v. Fernandez CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C070130 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF10-256) |
| v. | |
| CORY WALLACE FERNANDEZ, | |
| Defendant and Appellant. | |

Following a bench trial, the trial court found defendant Cory Wallace Fernandez guilty of attempting to murder one housemate and assaulting another with a firearm, along with another offense and two firearm enhancements.[1]  (Pen. Code, §§ 664/187,

---

[1] In a *footnote* in his *statement of the case*, defendant asserts the court's minute orders reflect the sustaining of lesser-included firearm enhancements that were not part of the trial court's oral pronouncement of its verdicts, and asks us to modify the judgment to delete any reference to these findings.  This manifestly improper way to raise an issue forfeits our plenary consideration of it.  (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.)  We thus confine ourselves to observing that the *judgment* is the trial court's oral

1

subd. (a), 245, subd. (a)(2), & former § 12021, subd. (a)(1).)  It sentenced him to state prison.

On appeal, defendant contends there is insufficient evidence of his intent to kill the attempted murder victim.  He also maintains that he is entitled to additional custody and conduct credit, a point the People concede.  We shall affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties provide lengthy summaries of the evidence at trial.  We limit our account, however, to the facts relevant to defendant's argument.

The assault victim had multiple people living with him in itinerate fashion in bedrooms and sleeping on couches in the four-bedroom house.  Neighbors described the atmosphere at the residence as being obnoxious, rowdy, and loud; drinking, drug ingestion, and fighting all took place.  Defendant had been living there for about six months.  The assault victim testified that he and defendant were "pretty good friends most of the time," though defendant's roommate testified that she heard them argue "quite a bit" and a neighbor also had heard the assault victim yelling at defendant.  The attempted murder victim had known defendant for about six to eight months, and had thought that they were good friends.

On May 28, 2010, the attempted murder victim was visiting the residence, helping to put a spark plug into a four-wheeler.  He had been there only a few minutes when defendant challenged him about taking defendant's firewood, which the victim admitted (saying "so what?").  The attempted murder victim then challenged defendant to "kick [the victim's] ass" and hurt him.  Defendant told the victim to check out what defendant had for him.  Defendant then shouldered a .22-caliber long rifle that he had been holding

---

pronouncement of sentence, which does not include either of these other lesser enhancement findings (nor does the abstract of judgment).

2

for about a minute and shot the attempted murder victim. (The witness did not see from where the rifle came.) The victim was six to 10 feet away and unarmed, and had not verbally or physically threatened defendant. The bullet caused his right lung to collapse and lodged in his right shoulder blade.

The attempted murder victim walked briefly into the house to look for his cell phone. When he could not find it, he came back out on the porch and sat down on a couch. He saw defendant beating the unarmed assault victim over the head with the rifle, who had also been on the porch and involved in the dispute about the firewood (but who otherwise had not provoked defendant in any manner). Although the attempted murder victim was sitting on the porch, defendant did not attack him further. Defendant threw the weapon onto a chair and told another resident to wipe the prints off of it, and then defendant "beat feet" down the driveway. An investigator found unspent .22-caliber casings on defendant's bed.

## DISCUSSION

## I. The Evidence of Intent to Kill Is Sufficient

"Attempted murder requires the specific intent to kill" (and a direct but ineffectual act toward that goal) in the form of express malice, which is a desire for the victim's death or the knowledge "to a substantial certainty that the victim's death will occur." (*People v. Booker* (2011) 51 Cal.4th 141, 177-178.)

Ignoring the principle of conflicting inferences (*People v. Lenix* (2008) 44 Cal.4th 602, 625-626 [must adopt inferences that favor judgment]) and engaging in the pointless task of comparing the present case with others on the issue of sufficient evidence (*People v. Rundle* (2008) 43 Cal.4th 76, 137-138 [reviewing sufficiency of evidence "necessarily calls for analysis of the unique facts and inferences present in each case" and therefore "comparisons between cases are of little value"]), defendant asserts the circumstances of

3

the shooting "do not evidence an intent to kill." He asserts the witnesses did not specifically attest to him aiming directly at the victim; he did not make any express indication of an intent to kill; and he did not further attack the victim in any manner (whom he easily could have killed with a shot at close range had that been his intent). Defendant also posits that he had much more of a motive to kill the assault victim, whom he did *not* shoot, so "it is even less likely that he harbored an intent to kill" the other victim. He thus considers a finding of intent to kill to be purely speculative.

Defendant's own authority makes the points that "absence of a clear motive does not demonstrate the lack of an intent to kill," that "shooting a firearm toward a victim at close range in a manner that *could have* inflicted a mortal wound . . . is sufficient to support an inference of an intent to kill" (italics added), and "[t]hat defendant may have fired once and then abandoned his efforts does not compel the conclusion he lacked the intent to kill in the first instance." (*People v. Houston* (2012) 54 Cal.4th 1186, 1218; accord, *People v. Smith* (2005) 37 Cal.4th 733, 741-742; *People v. Lashley* (1991) 1 Cal.App.4th 938, 945-946 (*Lashley*) [act of firing .22-caliber rifle toward victim "at a range and in a manner that could have inflicted a mortal wound had the bullet been on target" supports inference of intent to kill].) Defendant's contentions to the contrary simply amount to an effort to fashion inferences favorable to himself on the present evidence.

The absence of any direct evidence of his intent to kill is irrelevant. (*People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690 [such intent "must usually be derived from all the circumstances"]; *Lashley*, *supra*, 1 Cal.App.4th at pp. 945-946 [defendants "do[] not often declare [their] state of mind either before, at, or after the moment" they shoot and thus intent must be inferred from circumstances].) That defendant aimed at the victim may be inferred from the bullet hitting its mark; there certainly is not any evidence that defendant might have aimed elsewhere. Defendant's mere transitory annoyance over the

4

firewood and his friend's taunts can nonetheless be consistent with an intent to kill. (*People v. Arias* (1996) 13 Cal.4th 92, 162.)

In short, a finder of fact might reasonably have found defendant lacked an intent to kill, but it is an equally reasonable inference that he intended at least briefly to shoot to kill. As the evidence does not favor defendant as a matter of law, it is sufficient to support the verdict of attempted murder.

## II. Credits

The trial court committed two computational errors in determining defendant's custody and conduct credits. Defendant had been in continuous custody from the date of his arrest on May 28, 2010. Thus, as of the date of his sentencing (January 9, 2012), he had been in custody 592 days, not 591. Conduct credits at a rate of 15 percent (Pen. Code, § 2933.1) amount to 88 days for either figure, not 82. We therefore will modify the judgment accordingly.

## DISPOSITION

Defendant is awarded 592 days of custody credit and 88 days of conduct credit. As thus modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

                                                     BUTZ           , J.

We concur:

      NICHOLSON      , Acting P. J.

      MAURO      , J.