Filed 10/31/14  P. v. DelReal CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MIGUEL DELREAL,<br><br>　　　Defendant and Appellant. | B249636<br><br>(Los Angeles County<br>Super. Ct. No. KA098112) |

_____

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mike Camacho, Judge.  Convictions affirmed; remanded for resentencing.

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Miguel DelReal appeals from his convictions of two counts of attempted murder, two counts of assault with a semiautomatic firearm and accompanying gang and firearm sentence enhancements.[1] We affirm the convictions and remand the cause to the trial court to vacate the gang enhancements and resentence DelReal accordingly.

## FACTS AND PROCEEDINGS BELOW

DelReal approached Cindy Chavez as she sat in a car on Magnum Street in Baldwin Park, an area claimed by the East Side Bolen Parque gang (BP gang). DelReal "hit her up" by announcing: "This is Varrio East Side Bolen Parque; they call me Chapitas; this is my street." Chavez told DelReal she didn't "gangbang" and to leave her alone. Chavez then ignored DelReal and he eventually walked away.

Later the same month DelReal approached Chavez as she sat in a car on the same street conversing with a friend. DelReal told Chavez to "get the fuck out of his street" and announced that he was from the BP gang. Chavez told DelReal to leave her and her friend alone. DelReal retorted that they were on "his block, his neighborhood" and told Chavez "you need to leave." Chavez got out of the car and approached DelReal. She told him to "grow up." As she turned to walk away, DelReal struck her with his hand behind her left ear. Chavez turned back and confronted DelReal who ran away. Chavez followed him and challenged him to a fight saying, "You hit like a bitch, let's box." DelReal ran into a nearby house and returned with a small knife and began chasing Chavez. Chavez stopped running and began swinging at DelReal with her fists as he swung at her with the knife. The fight ended without injuries to either party.

Four days later Chavez was driving a car with Mitch Rodriguez as her passenger when she saw DelReal standing on Magnum Street. She told Rodriguez that DelReal was the one who had tried to stab her and asked Rodriguez if he had seen him as they drove by. Rodriguez said he hadn't so Chavez made a U-turn and drove back to where DelReal was standing. Chavez pointed to DelReal as she drove past. DelReal, who was standing

---

[1]     DelReal was convicted of other offenses in the same proceeding but he does not challenge those convictions.

2

on the sidewalk on the passenger side of the car, looked directly at Chavez and Rodriguez and Chavez saw him pull a "small black handgun" from his waistband. Chavez accelerated and DelReal fired a single shot that shattered her front passenger side window. The bullet lodged in the passenger side door. Chavez drove home and called the police.

A few days later the police recovered a .380 caliber semi-automatic firearm that they observed DelReal throw from a car just prior to his arrest. A criminalist testified the bullet fired into the passenger door of Chavez's car came from that weapon.

A jury convicted DelReal of the attempted murder of Chavez and Rodriguez and of assaulting each of them with a semi-automatic firearm. The jury also found DelReal committed these crimes for the benefit of the BP gang and with the specific intent to promote, further or assist in criminal conduct by the gang's members.

The court sentenced DelReal to seven years on each of the attempted murder convictions, six years on each of the assault convictions, a 10-year gang enhancement on each of four counts and imposed gun enhancements on each of the counts. Because the court imposed other sentences for other convictions in this same proceeding, the court stayed the foregoing sentences pursuant to Penal Code section 654.[2]

---

[2]      Statutory references are to the Penal Code.

3

**DISCUSSION**

## I. THE CONVICTIONS OF ATTEMPTED MURDER AND ASSAULT ARE SUPPORTED BY SUBSTANTIAL EVIDENCE AS TO BOTH VICTIMS.

DelReal contends that the evidence only supports his attempted murder and assault convictions as to Chavez, not as to Rodriguez her passenger.

We can quickly dispose of this argument because, as DelReal concedes, "[a] single shot can support two convictions for attempted murder [and assault] if the two victims are physically aligned such that the trajectory of the bullet, had the aim been true, would have passed through the first and struck the second and that was the defendant's intent." This was the scenario in *People v. Smith* (2005) 37 Cal.4th 733, 748 [attempted murder of mother and her baby in the backseat directly behind her] and *People v. Chinchilla* (1997) 52 Cal.App.4th 683, 691 [attempted murder of two police officers one of whom was crouched in front of the other].)

Here the evidence showed that Chavez was in the driver's seat of the car, Rodriguez was in the front passenger seat, and DelReal was on the sidewalk on the passenger side of the car. In that configuration, Rodriguez's and Chavez's bodies would have been aligned like the mother and baby in *Smith* and the officers in *Chinchilla*.

The evidence is therefore sufficient to support all four convictions.

## II. THE GANG ENHANCEMENTS ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

DelReal contends that the evidence was insufficient to support the gang enhancements because it did not show that BP gang met the definition of a "criminal street gang" under section 186.22, subdivision (f). We agree.

A gang enhancement requires proof that the defendant committed a felony "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) We review the whole record in the light most favorable to the

judgment to decide whether substantial evidence supports the court's sentence enhancement. (*In re Alexander L.* (2007) 149 Cal.App.4th 605, 610.)

Section 186.22, subdivision (f) defines a "criminal street gang" in relevant part as: "[A]ny ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its *primary activities* the commission of one or more of the criminal acts enumerated in . . . subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (Italics added.)

In *People v. Sengpadychith* (2001) 26 Cal.4th 316, 323-324 our Supreme Court explained that "[t]he phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations"; crimes that the gang commits "consistently and repeatedly." The court went on to say that proof of the gang's primary activities might be satisfied by expert testimony of the type found in *People v. Gardeley* (1996) 14 Cal.4th 605 where a police gang expert testified that the defendant's gang "was primarily engaged in the sale of narcotics and witness intimidation, both statutorily enumerated felonies. [Citation.]" (*People v. Sengpadychith*, *supra*, 26 Cal.4th at p. 324.)

The evidence of BP gang's "primary activities" consisted of the following testimony.

The prosecutor asked Detective Honeycutt on direct examination: "What are the primary activities of the [BP] gang? What are the main things that they do?" Honeycutt responded: "Anything. Anything from graffiti, drug sales, drug possession, vehicle theft, robbery, attempted murder, murder."

On cross-examination, Honeycutt testified that his definition of "primary activity" is "[w]hat the gang is involved in."

On re-direct examination Honeycutt was questioned and responded as follows:

"Q. . . . [W]hat activities are they doing when they are acting as [BP] gang members?

5

"A.  What activities do they commit or what crimes do they commit?

"Q.  Yes.

"A.  Like I said, it's broad.  It's anything from vandalism all the way up to robbery, shootings, weapons possessions, attempted murders, murders . . . drug sales, drug possession."

Honeycutt's testimony does not constitute substantial evidence that the BP gang is a criminal street gang for purposes of the gang enhancement statute.  Honeycutt testified that his definition of "primary activity" is "[w]hat the gang is involved in." His list of the putative gang's alleged primary activities thus has no tendency to show that any of the listed activities were the "chief" or "principal" occupations of the BP gang, or that the BP gang engaged in any of those activities "consistently and repeatedly" enough for them to be "primary" within the meaning of the statute.  (*People v. Sengpadychith*, *supra*, 26 Cal.4th at p. 324, italics omitted.)  Furthermore, Honeycutt's testimony lumps together qualifying crimes, such as robbery and murder (§ 186.22, subd. (e)(2) & (3)) with nonqualifying crimes such as simple drug possession and misdemeanor vandalism. Again, the record contains no evidence that when the nonqualifying offenses are excluded, the qualifying offenses were committed with sufficient frequency to constitute primary activities of the gang.[3]

---

[3]     We reject DelReal's argument that his attempted murder convictions should be overturned because the gang evidence, although insufficient to establish the gang enhancement, was highly prejudicial and inflammatory as to the other charges against him.  DelReal did not object to the gang evidence on that ground in the trial court and, in any event, the gang evidence was relevant to other issues in the case such as motive. (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.)

**DISPOSITION**

The convictions are affirmed. The cause is remanded to the trial court with directions to vacate the gang enhancements, resentence defendant accordingly and send a corrected copy of the abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


JOHNSON, J.

7