Filed 4/19/22  P. v. Carrillo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C091539 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE012477) |
| v. | |
| LEO A. CARRILLO, | |
| Defendant and Appellant. | |

A jury convicted defendant Leo A. Carrillo[1] of two counts of attempted murder (Pen. Code, §§ 187, subd. (a), 664 – counts one & four),[2] two counts of discharging a firearm from a motor vehicle (§ 26100, subd. (c) – counts two & five), three counts of assault with a semiautomatic firearm (§ 245, subd. (b) – counts three, six, & eight), two

---

[1]    In light of the spelling employed elsewhere in the appellate record, the abstract of judgment appears to have misspelled defendant's name as "Carillo."  On remand, the trial court shall ensure that the abstract of judgment reflects defendant's correct name.

[2]    Undesignated statutory citations are to the Penal Code.

1

counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1) – counts seven & nine), one count of being a felon in possession of ammunition (§ 3035, subd. (a)(1) – count ten), and a count of hit and run causing injury (Veh. Code, § 20001, subd. (b)(1) – count eleven). The jury found true allegations that defendant personally used and intentionally discharged a firearm in connection with attempted murder and discharge of a firearm from a motor vehicle (§ 12022.53, subds. (b)-(d)); used a semiautomatic firearm in committing assault with a firearm as to counts three, six, and eight (§ 12022.5, subds. (a), (d)); personally inflicted great bodily injury in committing attempted murder as to count three (§ 12022.7, subd. (a)), inflicted great bodily injury in counts one and two (§ 12022.53, subd. (d)), and used a firearm in committing attempted murders (§ 12022.53, subd. (b)). After the jury convicted defendant, the trial court found true the allegations that defendant had a prior serious felony conviction (§ 667, subd. (a)) and a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12).

The trial court sentenced defendant to a determinate term of 13 years 4 months plus an indeterminate term of 53 years to life in state prison. Defendant also received a term of eight years in state prison to be served concurrently. The trial court stayed the sentences on counts two, three, five, six, and seven under section 654. Defendant appeals.

In defendant's opening briefing, he contends (1) the evidence at trial was insufficient to support his conviction of attempted murder of one of his victims, D.M., (2) the trial court violated his due process rights by instructing the jury with CALCRIM No. 315 regarding the degree of certainty of eyewitnesses, and (3) the abstract of judgment must be corrected to reflect the trial court's stay of the sentence for count two under section 654. In supplemental briefing, defendant argues that he is entitled to be resentenced under the recently amended version of section 654, and that he is entitled to the benefit of the newly added subdivision (b)(6) of section 1170. The Attorney General agrees that the abstract of judgment must be corrected to reflect the trial court's

2

pronouncement of sentence, that defendant is entitled to be resentenced under the newly amended version of section 654, and argues that defendant will receive the benefit of the trial court's consideration of section 1170, subdivision (b)(6), during resentencing.

We conclude that the evidence amply supported defendant's conviction of premeditated attempted murder of D.M. after defendant discharged his firearm toward D.M. at a close range. We reject defendant's claim of instructional error under the recent guidance of the California Supreme Court in *People v. Lemcke* (2021) 11 Cal.5th 644 (*Lemcke*), which addressed the same version of CALCRIM No. 315 as given in this case. Defendant is entitled to resentencing under the newly operative version of section 654. In resentencing defendant, the trial court shall consider whether subdivision (b)(6) of section 1170 applies and shall ensure that the abstract of judgment correctly reflects the sentence pronounced. Accordingly, we affirm defendant's convictions and remand for resentencing under sections 654 and 1170, subdivision (b)(6).

## FACTUAL AND PROCEDURAL HISTORY

### *Bonfare Market Shooting (Counts One through Seven)*

At 10:30 p.m. on June 24, 2017, D.J. and D.M. walked to Bonfare Market. D.J. and D.M. were very close friends and considered themselves to be brothers. D.J. made a purchase inside the store. Three young women who had just arrived by car started talking to D.J. and D.M. as they were exiting the store. Their banter was "[j]ust flirtatious conversation."

Defendant interrupted the conversation. Defendant "was confused. He . . . started the conversation with huh as if [D.J. and D.M.] were talking to him . . . ." Defendant then said, "are you taking to me?" D.J., D.M., and the women in the car all responded with "no." Defendant "was very wobbly and he seemed upset." D.J. testified there was "just a long pause before he showed us his pistol." Defendant had grabbed his pistol from his car and then aggressively asked again whether D.J. and D.M. were talking to him. The young women left immediately. D.J. and D.M. began walking away too.

3

Defendant got into his car, drove into the lane of opposing traffic, and pulled up right next to D.J. and D.M. Defendant asked "if there was a problem." D.M. responded, "We don't have a problem. We don't know you." Defendant asked the question again. D.J. testified that defendant pointed his gun "[t]oward me and my brother on the sidewalk." Defendant was five feet away from them. Defendant began firing. D.M. testified that defendant "just pulled up and his window was like cracked halfway down, and then he said hey and pulled out the gun and just let off seven shots." D.M. explained that when defendant started firing, they were "[l]ike right there. We were all together, like literally on the same spot."

D.J. ran in one direction and D.M. ran in the other. D.J. began running only after the first shot was fired. There was nowhere for D.J. and D.M. to run because they "were boxed in" by an electrical box. D.J. fell after being shot in the legs. D.J. began crawling. D.M. was not hit by any bullets. However, something hit him underneath his eye. D.J. got up, walked to a friend's car, and was driven to a fire station to get medical care. He ended up requiring surgery for his injury.

An acquaintance of D.J. and D.M. was at the Bonfare Market and saw them walking out of the store. She then observed D.J. and D.M. interact with defendant, whom she did not know. She saw defendant stick his hand into his car and fiddle inside the car. Defendant got into the car, backed out, then drove on the opposite side of the road. The acquaintance saw defendant stick his hand out and shoot a gun. After the acquaintance received a subpoena, she researched defendant's name on the Internet, found his picture, and believed that defendant's face matched that of the shooter.

### Helena Avenue Shooting (Counts Eight through Eleven)

On the night of July 4, 2017, A.G. went to his neighbor's house on Helena Avenue in Sacramento. A.G. was standing outside the house watching fireworks when he "heard a gunshot" and "next thing [he] knew [he] was on the floor." A.G. had been shot on the right side of his head. A.G.'s brother, J.O., picked him up and rushed him to the hospital.

4

J.O. had been watching the fireworks with A.G., when he saw a small, dark color car pull up and then the sparks of a gun firing. The moment J.O. saw the sparks from the gun, his brother was hit by a bullet. J.O. heard tires screeching and the car sped off.

A.P. was driving a Honda Pilot home after taking his family to watch fireworks. He was at the intersection of Del Paso Boulevard and Helena Avenue when he saw a vehicle coming toward him. A.P. attempted to swerve, but the oncoming vehicle hit the corner of his car. A.P. watched the vehicle speed away. A.P.'s family called the police as A.P. followed the vehicle. A.P. noticed two or three people in the other vehicle. He saw the that the driver was a male wearing a "49ers jersey." A.P. temporarily lost sight of the vehicle for one to three minutes, and when he found it again the vehicle had been abandoned. A.P. waited for the police to arrive and gave the officers his statement.

Around 11:00 p.m., Sacramento County Police Department Officer Ryan Thomas was dispatched to investigate a hit-and-run collision. The dispatcher informed Officer Thomas that suspects had exited the vehicle and had fled on foot. Within minutes, Officer Thomas observed two individuals matching the description provided by the dispatcher. Defendant was one of the individuals and Maurice Graves was the other. Defendant was wearing "a red 49ers jersey" and both were walking away from the site of the vehicle collision. A witness saw defendant with a gun in his waistband. Gunshot residue was found on the hands of defendant and Graves.

Officer Thomas searched the vehicle, a silver Nissan with damage to its front wheel. Inside the vehicle, the officer found a clear plastic bag containing 21 rounds of .22-caliber ammunition. Four .22-caliber shell casings would later be found around the area of the driver's seat. A homeowner found a .22-caliber handgun along the fence line of a nearby residence. At trial, the parties stipulated that the shell casings found in relation to the Bonfare Market shooting and the shooting of A.G. all came from this .22-caliber handgun. The parties further stipulated that defendant was prohibited from possessing a firearm or ammunition after a criminal conviction in 2016.

5

*Defense*

During closing arguments, defendant's trial attorney argued to the jury that the trial was "all about" identity. In discussing the evidence introduced at trial, defendant's trial attorney argued that the prosecution had not proven that defendant was the person who committed the Bonfare Market or Helena Avenue shootings. Defense counsel further argued that there was no evidence that defendant facilitated, aided, promoted, encouraged, or instigated illegal conduct by Graves in commission of the Helena Avenue shooting.[3]

## DISCUSSION

## I

### *Sufficiency of the Evidence for Attempted Murder of D.M.*

Defendant contends his conviction of attempted murder of D.M. must be reversed because the evidence did not show intent to kill D.M. We disagree.

### A.

### *Standard of Review*

When presented with a claim of insufficient evidence, we examine the entire record to assess whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Thus, "we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. ([*People v*.] *Boyer* [(2006)] 38 Cal.4th [412,] 480.) 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the

---

[3]     On appeal, defendant does not argue that the evidence of his identity was insufficient, but only that the evidence was legally insufficient to prove his intent to kill D.M. in the Bonfare Market shooting.

credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' ([*People v.*] *Maury* [(2003) 30 Cal.4th 342,] 403.) A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)" (*Ibid.*)

## B.

### *Attempted Murder*

The California Supreme Court has explained that an attempted murder conviction requires that "the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' (*People v. Lee* (2003) 31 Cal.4th 613, 623.) When a single act is charged as an attempt on the lives of two or more persons, the intent to kill element must be examined independently as to each alleged attempted murder victim; an intent to kill cannot be 'transferred' from one attempted murder victim to another under the transferred intent doctrine." (*People v. Canizales* (2019) 7 Cal.5th 591, 602 (*Canizales*), citing *People v. Bland* (2002) 28 Cal.4th 313, 327-328 (*Bland*).) In short, " 'To be guilty of attempted murder, the defendant must intend to kill the alleged victim, not someone else.' " (*People v. Smith* (2005) 37 Cal.4th 733, 740 (*Smith*), quoting *Bland,* at p. 328.)

Proof of the specific intent to kill often rests on circumstantial evidence. "Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime." (*Canizales*, *supra*, 7 Cal.5th at p. 602.) Discharging a firearm directly at a nearby victim suffices to establish intent to kill. " 'The act of firing toward a victim at a close, but not point blank, range "in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill . . . ." [Citation.]' (*People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690 (*Chinchilla*); see also *People v.*

7

*Villegas* (2001) 92 Cal.App.4th 1217, 1224-1225.) ' "The fact that the shooter may have fired only once and then abandoned his efforts out of necessity or fear does not compel the conclusion that he lacked the animus to kill in the first instance. Nor does the fact that the victim may have escaped death because of the shooter's poor marksmanship necessarily establish a less culpable state of mind." ([*People v. Lashley* (1991) 1 Cal.App.4th 938,] 945.)' (*Chinchilla*, at p. 690.)" (*Smith*, *supra*, 37 Cal.4th at p. 741.)

## C.

### *Evidence of Intent to Kill D.M.*

The evidence introduced at trial was sufficient to support defendant's conviction of attempted murder of D.M. Defendant was standing five feet away from D.M. and D.J. when he pointed his gun toward them. D.J. testified that defendant aimed "[t]oward me *and my brother* on the sidewalk" before "he fired off six shots." (Italics added.) D.M. testified that he and D.J. were standing "literally on the same spot" when the shooting began. This testimony sufficed to allow a reasonable jury to conclude that defendant intended to kill both D.M. and D.J. with his volley of bullets. That defendant's poor marksmanship kept his salvo from killing D.M. and D.J. does not exonerate him from attempted murder convictions for both of his victims. (*Smith*, *supra*, 37 Cal.4th at p. 741.)

We reject defendant's attempt to portray the evidence as showing that only D.J. was the target of the shooting. Although D.J. was the only one hit by bullets, the evidence clearly showed that defendant began firing directly at both D.J. and D.M. That D.J. and D.M. began running in different directions after the shooting does not negate the fact that defendant began shooting at both of them while D.J. and D.M. stood in the same spot.

We are also not convinced by defendant's attempt to portray the area where D.J. and D.M. were standing as less confined than the enclosed interior space of a car for which the California Supreme Court upheld multiple attempted murder convictions in

8

*Bland*, *supra*, 28 Cal.4th 313.  The *Bland* court held that multiple shots into a car supported attempted murder convictions relating to all of the passengers.  (*Id.* at pp. 330-331.)  The evidence in this case shows even closer proximity between the victims because there was no distance between D.J. and D.M. when defendant started firing.  *Bland* does not support defendant's argument of insufficient evidence.

Defendant's attempt to distinguish *People v. Cardenas* (2020) 53 Cal.App.5th 102 is unavailing.  *Cardenas* involved two defendants who were convicted of murdering a stranger they encountered in a parking lot and also convicted of attempted murders of two relatives of the stranger who were nearby.  (*Id.* at pp. 107-108.)  Although the *Cardenas* court held that a kill-zone jury instruction had erroneously been given, the evidence at trial had been sufficient to prove intent to kill the two relatives.  (*Id.* at pp. 111, 119.)  *Cardenas* held that the evidence of attempted murder was sufficient because the shooter had "pointed a gun in the direction of both men and fired multiple shots in their direction."  (*Id.* at p. 120.)  As in *Cardenas*, defendant in this case pointed the gun in the direction of both D.M. and D.J. and fired multiple shots in their direction.  We conclude there was sufficient evidence to prove attempted murder of D.M.

## II

### *CALCRIM No. 315*

Defendant's opening brief argues that the trial court erred in giving CALCRIM No. 315 on eyewitness identification in derogation of his due process rights.  In so arguing, defendant noted that the issue was then pending in the California Supreme Court.  The California Supreme Court subsequently issued its decision in *Lemcke*, *supra*, 11 Cal.5th 644.  The *Lemcke* court examined the same version of CALCRIM No. 315 as given in this case and held that the pattern instruction does not violate due process.  (*Lemcke,* at p. 654 & fn. 5; *id.* at p. 646.)  Specifically, the California Supreme Court found "nothing in CALCRIM No. 315's instruction on witness certainty . . . operates to 'lower the prosecution's burden of proof.' "  (*Id.* at p. 657.)  And, while the *Lemcke* court

noted ongoing scientific research into the accuracy of eyewitness testimony, it also held that "CALCRIM No. 315's instruction on witness certainty did not violate [defendant's] due process rights . . . ." (*Id.* at p. 665.) We follow the *Lemcke* court's holding and reject defendant's due process challenge to CALCRIM No. 315.

## III

### *Correction of the Abstract of Judgment*

Defendant's final contention in his opening brief is that the abstract of judgment must be corrected to reflect the sentence pronounced by the trial court. Defendant points out the trial court ordered the punishment for discharging a firearm from a motor vehicle (count two) stayed under section 654 but that the abstract of judgment does not note the stay. The Attorney General agrees that the abstract of judgment must be corrected.

It is well settled that "appellate courts . . . that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Thus, we would ordinarily remand the matter for correction of the abstract of judgment to reflect the trial court's staying of the sentence for count two under section 654. (*Mitchell,* at p. 185.) However, as we explain in the next section, the newly enacted version of section 654 requires remand to allow the trial court to exercise its discretion anew under the amended version of section 654. Following the exercise of its discretion on remand, the trial court has its usual prerogative and duty to ensure that the abstract of judgment comports with the sentence as pronounced. (*Mitchell,* at p. 185.)

## IV

### *Section 654*

In supplemental briefing, defendant argues that this case must be remanded for resentencing under the newly amended version of section 654. The Attorney General concedes the issue. We agree and order the matter remanded to the trial court with instructions to exercise its discretion under the current version of section 654.

At the time defendant was sentenced, former section 654, subdivision (a) provided: "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Stats. 1997, ch. 410, § 1, p. 2753.) Assembly Bill No. 518 (2021-2022 Reg. Sess.), which went into effect January 1, 2022, amended section 654 to allow trial courts to exercise discretion in choosing the count for which it will impose punishment, rather than requiring the longest potential term of imprisonment. (Stats. 2021, ch. 441, § 1.) Section 654, subdivision (a) now provides: "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions . . . ." Defendant contends that because his case is not yet final, he is entitled to the benefits of amended section 654 pursuant to the principles of retroactivity established in *Estrada*. (*In re Estrada* (1965) 63 Cal.2d 740.)

In *Estrada*, the California Supreme Court held, "a statute that reduced the punishment for a crime applied retroactively to any case in which the judgment was not final before the statute took effect." (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303.) " 'The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' " (*Id.* at p. 308.) Assembly Bill No. 518 results in ameliorative changes to defendant's sentence, contains no indication the Legislature intended the amendment to apply prospectively only, and defendant's case was not final before amended section 654 went into effect on January 1, 2022. Thus, the newly operative version of section 654 gives the trial court the discretion to consider whether to stay defendant's sentences for attempted murder in counts one and four. Because defendant is entitled to resentencing under amended section 654, we remand the matter.

11

# V

## *Section 1170, Subdivision (b)(6)*

Also in his supplemental briefing, defendant argues that he is entitled to the benefit of the newly enacted statutory provision in section 1170, subdivision (b)(6). Senate Bill No. 567 (2021-2022 Reg. Sess.) added subdivision (b)(6) to section 1170. (Stats. 2021, ch. 731, §§ 1.3, 3)  The new subdivision provides that, with exceptions not applicable here, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:  [¶]  (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence.  [¶]  (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense.  [¶]  (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking."  (§ 1170, subd. (b)(6).)

The Attorney General argues that we need not consider the applicability of subdivision (b)(6) of section 1170 because the trial court will properly do so in the first instance when it resentences defendant under the newly operative version of section 654. On remand, the trial court that shall consider whether subdivision (b)(6) of section 1170 applies to this case while exercising its discretion in resentencing defendant under the current version of section 654.  (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

## DISPOSITION

Defendant's convictions are affirmed.  The matter is remanded for resentencing to allow the trial court to decide whether to exercise the discretion conferred by the recent amendments to sections 654 and 1170, subdivision (b)(6), and to ensure that the abstract of judgment correctly reflects the sentence pronounced.

                                               /s/

                                              HOCH, J.

We concur:

 /s/

BLEASE, Acting P. J.

 /s/

ROBIE, J.