Filed 10/4/13  P. v. Christon CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B238761 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA310312) |
| v. | |
| MAKEITHA K. CHRISTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Sam Ohta, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie A. Miyoshi and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Makeitha Christon of first degree murder (Pen. Code, § 187, subd. (a))[1] (count 1); three counts of attempted, willful, deliberate, and premeditated murder (§§ 664/187, subd. (a)) (counts 2, 3, 7); and four counts of attempted second degree robbery (§§ 664/211) (counts 4, 5, 6, 8). The jury found true the allegations that in each count, a principal was armed and used and discharged a handgun causing great bodily injury or death within the meaning of section 12022.53, subdivisions (b) through (e). It was further found true that each offense was committed for the benefit of, and in association with, a criminal street gang, within the meaning of section 186.22, subdivisions (b)(1)(A) and (b)(4).

In count 1, the trial court sentenced defendant to state prison for life without possibility of parole, plus 25 years to life for the firearm enhancement. In counts 2, 3, and 7, defendant was sentenced to life with the possibility of parole, plus 25 years to life for the section 12022.53, subdivisions (d) and (e) firearm enhancements. In counts 2, 3, and 7, the trial court also imposed a sentence of 10 years and 20 years, respectively, for the section 12022.53, subdivision (b) and (c) firearm enhancements, which were stayed. In counts 4, 5, 6, and 8, the court imposed a three-year term and stayed the term pursuant to section 654. In these latter counts, the trial court also imposed an enhancement pursuant to section 12022.53, subdivisions (d) and (e). The court imposed a sentence of 10 years and 20 years, respectively, for the section 12022.53, subdivision (b) and (c) firearm enhancements, which were stayed.

Defendant appeals on the grounds that: (1) there is insufficient evidence to support the conviction in count 7; (2) there was insufficient evidence to support the jury's finding of premeditation and deliberation in counts 2, 3, and 7; and (3) there was insufficient evidence to support the true finding on the gang enhancement.

---

[1] All further references to statutes are to the Penal Code unless stated otherwise.

## FACTS

**Prosecution Evidence**

On September 1, 2005, there was a dice game in the driveway of Johnny Stringer, the murder victim. There were up to 20 men playing and observing at any given time, including Duron Marshall, Keith Pierre, Donte Liggins, Kristopher Calmes, Andre Pommells, and John Kennedy. Estimates of the money on the ground during the game varied from about $400 to $2,000.

At one point, defendant arrived and greeted everyone. Marshall knew defendant to be a member of the Block Crips gang. About 10 minutes later, Marshall heard defendant ask, "Is anybody strapped?" Liggons heard him say, "There's a lot of money out here. Where the burners at?" Stringer told defendant there was no need for anyone to be strapped because they were at his house. Sometime later, after defendant had gone, Marshall and Pommells saw an individual walk past the driveway and look. He then cut across the grass on the diagonal. The young man had a bag in his left hand and his right hand in his pocket. He said, "Break yourselves," or "Give up the cheese," which meant he was going to rob the men.

Everyone stood up. Stringer stepped off the wall where he was standing next to Marshall and said, "Who are you?" The individual began to take out his hand and everyone saw the gun. The men started to turn and run. Marshall and Stringer were running in the same group, along with Liggins and Pommels and another man. They climbed over a fence as the individual was firing. Marshall made it to a rear brick wall and climbed over. Pierre and Kennedy were both hit by gunfire. Stringer was hit by three bullets. One bullet pierced his heart and both lungs, causing his death. Marshall saw the shooter run away.

Marshall believed there were seven men present at the time of the shooting. The shooter fired his gun in a "spraying motion," moving his hand left and right with his arm outstretched. The gun appeared to be a black and chrome Glock nine-millimeter handgun. Police found at least six shell casings at the scene.

3

Nikita Jackson was a friend of Stringer's and used to date defendant. Shortly after Stringer was killed, Jackson found defendant waiting for her when she arrived home at night. He told her that he needed to talk to her, but she had to promise she would not "flip out." He pulled out a gun and told her it was the gun that had killed Stringer. Defendant told Jackson he had visited the dice game and asked Stringer if they were shooting big money with no burner. Stringer said they were in front of his house and they did not need a burner. Defendant then went to 105th Street and asked if anyone wanted to "hit up the dice game." No one wanted to hit up Stringer except "one young dude." The young man rode with defendant, who parked on the street behind Stringer's home. Defendant gave the young man a gun and a plastic bag and told him not to shoot "because they don't have no gun." Defendant heard gunshots shortly thereafter, and the boy ran back to the car. Defendant dropped him off on 105th Street. The young man was Davione McDowell.

Jackson did not tell anyone what defendant said because she was afraid of getting hurt. Eventually she told Pommells, and he said not to tell anyone. Six or eight months later, Pommells gave her Detective Theodore Hammond's telephone number, and she called the detective. Jackson never saw a posting of reward money.

Detective Hammond is a supervisor within the homicide unit and investigated the shooting. He obtained approval from the city council for a reward but he did not post it. His investigation determined the identities of the individuals involved in Stringer's murder in January of 2006. He did not speak to Jackson until May 2006.

Deputy Sherriff Ryan Libe testified as a gang expert. He described the relationship of the Block Crips to the Rollin' Hundreds gang. There are several other gangs under the Rollin' Hundreds umbrella, including the Underground Crips. Defendant was a member of the Block Crips and Davione McDowell was a member of the Underground Crips. Deputy Libe believed both the Underground and Block gangs would have benefited from the crime.

4

**Defense Evidence**

Gloria Genyard lived near Stringer and heard shots on the day of the shooting. She then saw a young man with light skin and wearing baggy pants running south on Harvard Boulevard. She identified the young man in a photographic lineup. Defendant was not the man she chose.

Lavell Gilchrist was at the dice game with his cousin, Eric. He saw defendant arrive with two other men. Defendant made no comment about a gun, and Lavell heard no such comment. Lavell said he was a friend of defendant's and Stringer's. Eric Gilchrist also saw defendant arrive with two other men. He stated that defendant stayed for only five or 10 minutes. A long time after they left, the attempted robbery occurred. Eric did not recognize the robber because he wore a bandana. Eric had been defendant's friend since childhood.

Brandon Cornelious went to Stringer's with defendant. He saw an old car pass by "looking like they was up to something." Cornelious brought the car to everyone's attention and asked if they had a gun. He was concerned for safety because of the neighborhood. Cornelious had known defendant since the sixth grade, and they saw each other every day. He did not know if defendant was a "gang banger."

Defendant testified in his own behalf. He considered himself an inactive gang member. He associated with friends who are in the gang, since he was born and raised with them. He went to the dice game, but he and some friends left after seeing a strange car drive past. There were a lot of shootings in that area. He drove to 112th Street and was sitting on his car and texting when some people pulled up and said that someone had been shot on 103rd Street. Lavell Gilchrist drove up and told him it was Stringer. Defendant saw Jackson at the candlelight vigil and repast for Stringer but did not see her after that. He had not been to her house since 2005. He did not know the person identified as the shooter.

5

## DISCUSSION

### I. Conviction for the Attempted Murder of Marshall in Count 7

#### A. Defendant's Argument

Defendant contends that, because Marshall sustained no injuries and there was no circumstantial evidence McDowell shot at Marshall, the evidence does not support defendant's conviction for aiding and abetting the attempted murder of Marshall.

#### B. Relevant Authority

In reviewing a challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment, presuming in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27; *People v. Proctor* (1992) 4 Cal.4th 499, 528.)

If the verdicts are supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) It is the function of the trier of fact to assess the credibility of witnesses and draw reasonable inferences from the evidence. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 166.) Defendant thus bears an enormous burden in claiming there was insufficient evidence to sustain the verdict. The hurdle to secure a reversal is just as high when the prosecution's case depends on circumstantial evidence. (*People v. Stanley* (1995) 10 Cal.4th 764, 792.)

Reversal for insufficiency of the evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

#### C. Evidence Sufficient

Marshall testified that approximately an hour and a half after defendant left the dice game, McDowell walked past the house and then cut across the grass and sneaked up on the players. Marshall stated that he was standing right next to Stringer on a brick wall when McDowell said, "Break yourself," which meant to give up the money. Stringer stepped down from the wall and said, "Who are you?" to the intruder. McDowell then pulled out the gun and started shooting. McDowell sprayed the gunfire. Marshall said

6

that he was in the group that ran upon seeing the gun emerge—a group consisting of himself, Stringer, Dante Liggins, Andre Pommels, and another of Stringer's friends. Thus, Marshall was in the shooter's line of fire the entire time, and Marshall's lack of injury does not preclude a charge of attempted murder against the shooter and his aider and abettor.

The evidence for Marshall being a victim of an attempted murder is even stronger than the evidence presented in *People v. Chinchilla* (1997) 52 Cal.App.4th 683. In that case, the defendant fired one bullet in the direction of two officers, one of whom was crouched down while the other was crouched behind him and slightly above him. (*Id*. at p. 687.) The court affirmed the defendant's convictions for two attempted murders, concluding that a reasonable jury could infer from the fact the two officers were in close proximity to one another that he intended to kill both. (*Id*. at pp. 690-691.) In our case, more than one shot was fired. In fact, the shooter sprayed bullets at everyone there. "An indiscriminate would-be killer is just as culpable as one who targets a specific person." (*People v. Stone* (2009) 46 Cal.4th 131, 140.) Since we must accept logical inferences that the fact finder draws from the circumstantial evidence, we conclude that, under the natural and probable consequences doctrine, substantial evidence supports the jury's finding that defendant committed an attempted murder of Marshall as an aider and abettor, despite the fortuitous circumstance that Marshall was not struck by a bullet. Marshall's evidence of his proximity to Stringer when confronted by the robber and when running away place Marshall close enough to Stringer and the other victims to support the conviction.

## II. The Evidence in Support of the "Premeditated and Deliberate" Findings in Counts 2, 3, and 7

### A. Defendant's Argument

Defendant contends that there was insufficient evidence at trial to sustain the jury's finding that McDowell acted with premeditation and deliberation in attempting to kill Pierre, Marshall, and Kennedy. As a result, there was insufficient evidence to

7

support defendant's conviction as an aider and abettor of the attempted murders under a natural and probable consequences theory.

### B. Relevant Authority

Section 664, subdivision (a) provides in pertinent part that if an attempt to commit murder "is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole."

""""A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime. The latter question is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable. [Citation.]" [Citation.] Liability under the natural and probable consequences doctrine "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." [Citation.]' [Citations.]" (*People v. Favor* (2012) 54 Cal.4th 868, 874.) A reasonably foreseeable consequence is a factual issue to be resolved by the jury, which must evaluate the issue of reasonableness under all the factual circumstances of the individual case. (*Ibid*.)

### C. Proceedings Below

The trial court instructed the jury with CALCRIM No. 402 in pertinent part as follows: "To prove that the defendant is guilty of Attempted Willful, Deliberate and Pre-meditated Murder under a theory of Natural and Probable Consequences, the People must prove that: [¶] 1. The defendant is guilty of Attempted Robbery; 2. During the commission of the Attempted Robbery, the crime of Attempted Willful, Deliberate, and Pre-meditated Murder was committed; AND 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of Attempted Willful, Deliberate and Pre-meditated Murder was a natural and probable consequence of the commission of the Attempted Robbery."

### D. Evidence Sufficient

Attempted murder requires express malice, and, on appeal, we do not distinguish between attempted murder and completed first degree murder to determine whether there is sufficient evidence to support the finding of premeditation and deliberation. (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1462, fn. 8, disapproved on another point in *People v. Mesa* (2012) 54 Cal.4th 191, 199.) "Review on appeal of the sufficiency of the evidence supporting the finding of premeditated and deliberate murder involves consideration of the evidence presented and all logical inferences from that evidence in light of the legal definition of premeditation and deliberation . . . . Settled principles of appellate review require us to review the entire record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—from which a reasonable trier of fact could find that the defendant premeditated and deliberated beyond a reasonable doubt. [Citations.]" (*People v. Perez* (1992) 2 Cal.4th 1117, 1124.)

There are three basic, but not exhaustive, categories of evidence that will sustain a finding of premeditation and deliberation: (1) planning activity; (2) motive; and (3) manner of the killing. (*People v. Anderson* (1968) 70 Cal.2d 15, 26-27 (*Anderson*); see also *People v. Perez*, *supra*, 2 Cal.4th at p. 1125.) All of these factors need not be present to sustain a finding of premeditation and deliberation, nor must the factors be accorded a particular weight . (*People v. Pride* (1992) 3 Cal.4th 195, 247.) The *Anderson* factors are useful for review, but are not a sine qua non for a finding of premeditation and deliberation. (*Perez*, at p. 1125.)

In the instant case, the jury could reasonably find that McDowell killed Stringer and attempted to kill the others with premeditation and deliberation. McDowell set off to rob the men at the dice game armed with a semiautomatic weapon. When he approached the men and asked for the money, he had his hand in his pocket. When Stringer asked McDowell who he was, McDowell made the decision not only to extract the gun but to shoot it, spraying bullets at Stringer and those standing near him as they began to run away. "'Deliberation' refers to careful weighing of considerations in forming a course of

9

action; 'premeditation' means thought over in advance. [Citations.] 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly. . . ." [Citations.]' [Citation.]" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.) The California Supreme Court has "never required that there be an extensive time to premeditate and deliberate." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1127.) The fact that McDowell abandoned the robbery after shooting at the victims merely shows that he preferred escaping with no money to show for his attempt rather than to be caught. The evidence showed that McDowell clearly arrived at the cold and calculated judgment that he had to shoot at the intended victims of his robbery plan either to protect or establish his status as a gang member to be feared or simply to shoot his way out of the situation he had created.

Defendant disputes the premeditation findings based on the *Anderson* factors. The record shows, however, that McDowell armed himself with a firearm before approaching the dice game, indicating that he was prepared to take lethal action. As defendant acknowledges, several cases have held that the mere acts of arming oneself in order to commit a crime and then firing the gun, especially at close range as here, demonstrate premeditation for purposes of murder. (See, e.g., *People v. Marks* (2003) 31 Cal.4th 197, 230.) In this case, moreover, defendant and McDowell parked out of sight on the street behind Stringer's home, which shows planning activity. As for motive, it is evident that McDowell intended to commit a robbery, and he fired upon receiving an indication from Stringer that the men were not going to give up their money easily, although they did not provoke him or resist him in any way. The manner of killing, or attempted killing, also showed premeditation and deliberation, since pulling the gun out of his pocket and firing numerous times at close range is a particularly effective means of killing. McDowell fired even though the men ran away at the sight of his gun, and he kept firing until one man was dead and two were wounded, showing that the shooting was purposeful. (See *People v. Ramos* (2004) 121 Cal.App.4th 1194, 1208.) We reject defendant's argument

10

and conclude there was sufficient evidence to show that McDowell committed the attempted murders with premeditation and deliberation, and defendant was therefore guilty of willful, premeditated, and deliberate attempted murder under the natural and probable consequences doctrine.

## III. Status of Underground Crips as a Criminal Street Gang

### A. Defendant's Argument

Defendant contends there was insufficient evidence to support the gang enhancements because the gang expert did not prove that the Underground Crips, McDowell's gang, qualified as a criminal street gang. He argues that without proof that the Underground Crips qualified as a criminal street gang, it cannot be said that defendant committed the crime for the benefit of or in association with a criminal street gang. The jury's true finding on the section 186.22, subdivision (b) allegation must be reversed, which requires reversal of the firearm enhancements under section 12022.53.

### B. Relevant Authority

The standard of review for sufficiency of the evidence is discussed in the first section of this opinion. "Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22(b)(1)." (*People v. Albillar* (2010) 51 Cal.4th 47, 63.)

### C. Proceedings Below

The prosecution gang expert, Deputy Libe, testified that the Block Crips were under the umbrella of the Rollin' Hundreds. He identified their primary activities and their common signs. He testified as to predicate offenses committed by Block Crips members. He identified defendant as a member of the Block Crips based on documentation he had reviewed, conversations with Detective Hammond, and defendant's admission. Deputy Libe said he was familiar with a gang called the Underground Crips that got along with the Block Crips. The Underground Crips were also under the umbrella of the Rollin' Hundreds "street gang," and it was not uncommon for the members to commit criminal acts with Block Crips members. Deputy Libe was of

11

the opinion that Davione McDowell is a member of the Underground Crips based on numerous contacts he had with him and McDowell's admission.

When given a hypothetical based on the facts of the case, Deputy Libe said that both the Block Crips and the Underground Crips benefited from the attempted robbery and subsequent shooting. The crimes benefited the gangs by intimidating the community.

### D. Proof of Gang Allegation Sufficient

We agree with respondent that the People were not required to prove all of the elements of the gang enhancement with respect to the Underground Crips branch of the Rollin' Hundreds, or to prove that McDowell was a member of the Underground Crips, although his membership was established by self-admission. All of the elements were proved with respect to the Block Crips, and defendant's membership in the Block Crips was established.

Deputy Libe explained that the Block Crips benefited from the crimes committed in this case—crimes committed by McDowell that were instigated by and aided and abetted by defendant. There was sufficient evidence that defendant was a member of a criminal street gang and that McDowell's crimes benefited that criminal street gang. The same would have been true if defendant had recruited a nongang member to do the robbery. Whether any "participant[] was a member or associate of a gang is not an ultimate issue of fact in a gang enhancement allegation: gang membership is not an element; nor does one need to be a gang member or associate to commit an act for the benefit of, in association with, or at the direction of a street gang." (*People v. Valdez* (1997) 58 Cal.App.4th 494, 505.)

We conclude there was sufficient evidence to support the jury's true findings on the gang allegations for the instant crimes.

12

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.