Filed 5/22/24  P. v. Watkins CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B317088 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA452879) |
| v. | |
| PATRICK WATKINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Clay Jacke, II, Judge.  Affirmed in part, reversed in part, and remanded.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury convicted defendant Patrick Watkins of two counts of first degree murder (Pen. Code, § 187, subd. (a)[1]); 24 counts of willful, deliberate, and premeditated attempted murder (§§ 664, 187, subd. (a)); four counts of shooting at an occupied motor vehicle (§ 246); 13 counts of assault with a firearm (§ 245, subd. (a)(2)); three counts of second degree robbery (§ 211); one count of attempted second degree robbery (§§ 664, 211); and one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)).  The jury found true a multiple murder special circumstance allegation as to the murder convictions in counts one and two (§ 190.2, subd. (a)(3)) and firearm allegations as to all counts under section 12022.5, subdivisions (a) and (d) or 12022.53, subdivisions (b), (c), and/or (d).  Defendant admitted he had five prior convictions within the meaning of the Three Strikes law.  (§§ 667, subd. (d) and 1170.12, subd. (b).)

On appeal, defendant contends that insufficient evidence supported four of his convictions for willful, deliberate, and premeditated attempted murder; the trial court erred in admitting evidence of song lyrics; the prosecutor committed misconduct in her closing argument; the cumulative prejudicial effect of the admission of the song lyrics and the prosecutor's misconduct requires reversal; and sentencing error.  The Attorney General argues the court erred in awarding defendant presentence conduct credit.  We affirm defendant's convictions and remand for resentencing.

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

2

# II.    DISCUSSION[2]

A.    *Sufficient Evidence Supported Defendant's Attempted Murder Convictions on Count 5, 9, 44, and 16*

Defendant contends that insufficient evidence supported his convictions for the willful, deliberate, and premeditated murders of Dina Henriquez (count 5), Wilfrido Hernandez (count 9), Karina Piza (count 44), and Jose Reyes (count 16). Sufficient evidence supported the convictions.

## 1.    Standard of Review and Applicable Law

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient

---

[2]    We will set forth the facts underlying defendant's claims on appeal as necessary in our discussion of those claims.

3

substantial evidence to support"' the jury's verdict.  [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

"In order to prove an attempted murder charge, there must be sufficient evidence of the intent to commit the murder plus a direct but ineffectual act toward its commission.  [Citation.] Although malice may be express or implied with respect to a charge of murder, implied malice is an insufficient basis upon which to sustain a charge of attempted murder because specific intent is a requisite element of such a charge.  [Citation.]  Thus, to sustain a charge of attempted murder, the evidence must demonstrate a deliberate intention unlawfully to kill a fellow human being.  [Citation.]"  (*People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690.)

"[I]t is well settled that intent to kill or express malice, the mental state required to convict a defendant of attempted murder, may in many cases be inferred from the defendant's acts and the circumstances of the crime."  (*People v. Smith* (2005) 37 Cal.4th 733, 741.)  "The act of firing toward a victim at a close, but not point blank, range 'in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill . . . .'  [Citation.]  'The fact that the shooter may have fired only once and then abandoned his efforts out of necessity or fear does not compel the conclusion that he lacked the animus to kill in the first instance.  Nor does the fact that the victim may have escaped death because of the shooter's poor marksmanship necessarily establish a less culpable state of mind.'  [Citation.]"  (*People v. Chinchilla, supra,* 52 Cal.App.4th at p. 690; *People v. Smith, supra,* 37 Cal.4th at p. 741 ["the act of purposefully firing a lethal weapon at another at close range gives rise to an inference of intent to kill"].)

2.    Background

    a.    Counts 5, 9, and 44

Defendant's attempted murder of Henriquez was charged in count 5.

At about 10:50 p.m., on November 17, 2011, Henriquez was driving home. She was alone in her car and pulled to the curb near 7th Street and Kingsley Drive to smoke a cigarette. Henriquez's purse was on the passenger seat next to her.

After Henriquez finished her cigarette and began to start her car, defendant knocked on her front passenger window with a gun. Defendant pointed the gun at Henriquez and told her to give him her purse. About two seconds later, defendant fired a single shot at Henriquez.

The bullet shattered Henriquez's front passenger window and struck Henriquez's left leg. The bullet passed through her leg and lodged in the car's door. Defendant reached in the car, took Henriquez's purse, and left.

Defendant's attempted murder of Hernandez was charged in count 9.

At about 5:15 a.m., on September 21, 2012, Hernandez parked his Ford Expedition a few houses away from the home he shared with his mother and brother. He had picked up and dropped off his brother at their home. As he sat in his car after dropping off his brother, a gunshot shattered his front passenger window. Hernandez looked to his right and saw defendant holding a gun.

Hernandez said to defendant, "'Calm down. Hey, man. What do you want? You want my wallet? You want to rob me?

Do you want my phone?'" Defendant responded, "'Yeah, yeah, yeah. Give me the money. Let me get the wallet.'"

Hernandez extended his hand and wallet toward the opening that had been made in the passenger window. Defendant reached through the window, took Hernandez's wallet, and walked away.

Defendant's attempted murder of Piza was charged in count 44.

At about 12:25 a.m., on November 1, 2014, Piza had just arrived home and was parked at the curb on the corner of Gramercy Place and Washington Boulevard. She sat in her car texting.

Defendant approach on a bicycle and fired a shot through Piza's front passenger window, shattering it. After passing through the window, the bullet struck and damaged the car's gear shift.

Piza looked over and saw defendant at the passenger window. He was holding a gun and said, "'Bitch, give me your money.'" Piza responded, "'Please don't shoot me.'" She was afraid defendant was going to kill her. Defendant reached through the broken passenger window and Piza gave him her wallet. Defendant said, "'Bitch, get out of here.'"

b.     Count 16

Defendant's attempted murder of Reyes was charged in count 16.

At about 7:30 p.m., on January 8, 2013, Reyes was parked outside his friend Franciso Salinas's home on 35th Place. Reyes

6

was in the driver's seat; Jorge and Felipe Bravo sat behind him. Reyes called Salinas to have him come outside.

Salinas went outside. As Salinas approached Reyes's car, a Black man wearing a black hoody said, "'Fuck you,'" and shot Salinas in the back. Salinas tried to run and fell. The man then shot Salinas a second time—in the stomach. When Reyes saw Salinas fall, he was afraid and drove away.

Salinas heard a third shot that he thought "just went through the car." When Reyes got home, he noticed that his car "had been hit." The driver's door window was shattered and there was an "impact mark" on the driver's door that was not there before the shooting. When Reyes was at Salinas's house waiting for Salinas to come out, Reyes had rolled down his driver's door window.

### 3. Analysis

#### a. Counts 5, 9, and 44

Defendant contends his firing a single shot at each of Henriquez, Hernandez, and Piza did not support the inference that he had an intent to kill any of them. Instead, he argues, the evidence showed that no one was sitting in the passenger seat of the victims' vehicles and he used the access provided by the shattered windows to take property from the vehicles. Upon acquiring the property, he left the scenes without further violence—i.e., without firing another shot at an exposed victim.

Defendant's act of purposefully firing a bullet at Henriquez, Hernandez, and Piza at close range was sufficient evidence that defendant had the intent to kill. (*People v. Smith, supra*, 37

Cal.4th at p. 741; *People v. Chinchilla, supra*, 52 Cal.App.4th at p. 690.) In each incident, defendant shot through the front passenger window of an occupied car. The bullet struck Henriquez; Hernandez wrote on his photographic identification of defendant that defendant was the person who "'shot at me in my truck'"; and the bullet struck the gear shift directly next to Piza.

Moreover, that a jury reasonably might have found that defendant fired a shot into each victim's vehicle only to gain access to the property inside does not invalidate defendant's attempted murder convictions. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124 ["'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' [Citation.]"]; *People v. Mendez* (2010) 188 Cal.App.4th 47, 59 ["As long as substantial evidence supports the jury's finding, the possibility that the jury could reasonably have reached a different conclusion does not justify reversal. [Citations.]".)

Defendant also argues the evidence did not support the findings that he attempted to murder Henriquez, Hernandez, and Piza with premeditation and deliberation. He concedes the evidence showed that he "headed out on his bicycle, armed, suggesting a plan or at least readiness to perpetrate violence." Nevertheless, he contends that the evidence did not support an inference of a specific plan to kill, and the evidence only showed a motive to take property.

In determining whether a defendant acted with premeditation and deliberation, we assess "whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse.

8

[Citation.]" (*People v. Cage* (2015) 62 Cal.4th 256, 276, internal quotation marks omitted.) That a defendant arms himself with a weapon and uses the weapon to kill unarmed persons on multiple occasions, "reasonably suggests that he considered the possibility of murder in advance." (*People v. Miller* (1990) 50 Cal.3d 954, 993.) A victim's lack of provocation "similarly leads to an inference that the attacks were the result of a deliberate plan rather than a 'rash explosion of violence.' [Citation.]" (*Ibid.*) Finally, that a defendant commits "substantially similar crimes on a number of separate occasions strongly indicates planning activity. [Citations.]" (*Ibid.*)

Here, on the three separate occasions at issue, defendant armed himself with a gun and attempted to murder Henriquez, Hernandez, and Piza by shooting them while they sat in their vehicles. None of the victims did anything to provoke defendant. Thus, there was sufficient evidence that defendant attempted to kill Henriquez, Hernandez, and Piza according to a preconceived, deliberate, and premeditated plan. (*People v. Miller, supra*, 50 Cal.3d at p. 993.)

### b. Count 16

In his opening brief, defendant contends the single shot he fired at Salinas was insufficient evidence to show he intended to kill Reyes. In his reply brief, defendant concedes the evidence showed that three rounds were fired near Salinas's home and Reyes's car was hit with one of the rounds. He contends, however, that that evidence does not "permit a nonspeculative inference that Reyes, his car, or its other occupants were intentionally targeted." We disagree.

9

Defendant shot Salinas in the back. When Salinas fell to the ground, he shot him a second time—in the stomach. After the second shot Reyes drove away. Defendant then fired a third shot striking Reyes's driver's door. That evidence supported a nonspeculative inference that defendant targeted Reyes with the third shot.

Defendant also contends the evidence did not support a finding that he attempted to murder Reyes with premeditation and deliberation. He argues the evidence "does not establish [he] knew Reyes was there or that he positioned himself to target both Salinas and Reyes's car or its occupants. Rather, the damage to Reyes's car was collateral to [his] attempted murder of Salinas. The record contains no evidence [defendant] had a motive to harm Reyes. Finally, rather than fire at the departing car, [defendant] ignored it and continued targeting Salinas. Thus, the record rebuts any contention [defendant] used an exacting manner of violence to ensure Reyes's death."

First, defendant's argument is based on the mistaken premise that he fired a single shot at Salinas that also struck Reyes's car. Second, the evidence that supported the jury's finding that defendant had the intent to kill Reyes also supported the jury's finding that defendant acted with premeditation and deliberation. Defendant shot Salinas twice, then turned his attention to Reyes who was fleeing in his car and fired a shot that struck Reyes's door. (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1069 ["Premeditation and deliberation can occur in a brief interval. The test is not time, but reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly. [Citation.] [Citations.]" (Internal quotation marks omitted.)].) Also, like his attempted

10

murders of Henriquez, Hernandez, and Piza, defendant armed himself with a gun and attempted to murder Reyes who had done nothing to provoke him. (*People v. Miller, supra*, 50 Cal.3d at p. 993.)

B.     *Admission of Evidence of Song Lyrics*

Defendant contends the trial court abused its discretion when it admitted evidence about the lyrics of the AC/DC song Back in Black—defendant's "'go-to'" song—because the lyrics were irrelevant and had a great potential to mislead, confuse, or unduly prejudice the jury.[3] The court did not err.

---

[3]     Defendant also contends we should consider the court's ruling on the lyric's admissibility under recently enacted Evidence Code section 352.2, which became effective after defendant's trial was completed. (Stats. 2022, ch. 973 (A.B. 2799), § 2, eff. Jan. 1, 2023; *People v. Slaton* (2023) 95 Cal.App.5th 363, 370, review granted Nov. 15, 2023, S282047.) For the reasons explained in *People v. Slaton, supra*, 95 Cal.App.5th at pages 370–376, we conclude that Evidence Code section 352.2 does not apply retroactively, and thus has no application here. Evidence Code section 352.2's retroactivity is before our Supreme Court. (See *People v. Ramos* (2023) 90 Cal.App.5th 578, 596 [Evidence Code section 352.2 does not apply retroactively], review granted July 12, 2023, S280073; *People v. Venable* (2023) 88 Cal.App.5th 445, 456 [Evidence Code section 352.2 applies retroactively], review granted May 17, 2023, S279081.)

1.    Background

On October 29, 2015, defendant was arrested.  Los Angeles Police Department Officer Brandon Purece transported defendant to the robbery homicide department's headquarters.  During the trip, Officer Purece had a casual conversation with defendant.  Defendant said he had a bass guitar and was a musician.  The officer asked defendant if he had a "go to" song.  Defendant responded, "AC/DC Back in Black."

The prosecutor marked a copy of the Back in Black lyrics as People's Exhibit 375.  When discussing the admission of exhibits, defendant objected that the admission of Exhibit 375 violated Evidence Code section 352.  Defense counsel stated, "The objection is it's not relevant, but mostly it's highly prejudicial.  First of all, in terms of relevance, Your Honor, in the statement to the police he talked about [his] favorite song being Back in Black.  It doesn't necessarily mean because of the lyrics.  Lots of people love a song solely because of the sound or the beat.  It does not have to be the lyrics."

The prosecutor responded the lyrics were admissible because they described everything defendant had done in this case.

The trial court stated its view that some of the lyrics were relevant and some were prejudicial.  It asked the parties to work together to redact objectionable portions of the lyrics.  Defense counsel reiterated his objection that none of the lyrics should be admitted, but agreed to work with the prosecutor "to see if we can work something out."

12

Later, after further discussion, the trial court admitted Exhibit 375, as redacted.  Redacted, People's Exhibit 375 provided:

"AC/DC Lyrics

"'Back in Black'

"That's kept me hanging about

"I've been looking at the sky

"'Cause it's gettin' me high

"Forget the hearse 'cause I never die

"I got nine lives

"Cat's eyes

"Abusin' every one of them and running wild

"Yes, I'm back in black

"Number one with a bullet, I'm a power pack

"They've got to catch me

"'Cause I'm back on the track

"And I'm beatin' the flack

"Nobody's gonna get me on another rap

"So look at me now

"I'm just makin' my play

"Don't try to push your luck, just get out of my way"

During her rebuttal argument to the jury, the prosecutor stated:

"And what I find very curious in this case is that during the ride from his residence to the L.A.P.D. [robbery/homicide division] headquarters, the conversation that he the defendant has with the police officer . . . .  When they were talking about the instrumentals and his favorite song, the defendant said his favorite song was Back in Black. . . . And there's only a portion of

13

the lyrics that are in evidence in this case . . . I've put up some of the lyrics for you just so that you can see.

"'Back in Black. Kept me hanging about. Forget the hearsay [*sic*] cause I never die. I got nine lives. Cats eyes. Abusin every one of them and running wild.'

"He never dies, and he's got nine lives. How long was—he did flee every single scene, and the police didn't know who the Western Bandit was. He's abusin every one of them. I've put little clips . . . for you in the little surveillance video from the Dina Henriquez case in the top right where he's back in black, all in black. You have the surveillance videos you can play and you have the stills. And in that particular one I think you can see him wearing a very dark colored beanie on his head, too.

"But 'abusin every one of them.' She was distressed. Just like Karina Piza, Larise Smith[4] didn't even have a chance to be distressed. His dog left loose in the street running with a long leash. Martha Narinesingh[5] who couldn't even hear the last shot. She was in so much distress and under so much abuse. That's all you need to hear is her crying in the background. And 'abusin every one of them, running wild. I'm back in black.'

"And this, this [is] very faint—you can see it a lot clearer if you look at the video from the Karina Piza scene—where you cannot only see the bike but you can see again the defendant donning black.

---

[4]     The jury found defendant guilty of the first degree murder of Smith.

[5]     The jury found defendant guilty of the willful, deliberate, and premeditated attempted murder of Narinesingh.

"'Number one with a bullet.  I'm a power pack.  All the bullets in the house, and the empty ones.  They've got to catch me because I'm back on track and I'm beatin the flack.  Nobody's gonna get me on another wrap [*sic*].  So look at me now.  I'm just making my play.  Don't try to push your luck just get out of my way.  Yes.  I'm back in black.'

"All along Western Avenue and his victims that he attacked and abused because he didn't want them to give him any flack.  If there ever was a blueprint or lyrics that were put into action it was in this case.  And he really did think he had nine lives this defendant, and he thought he wouldn't be stopped."  (Bold and italics omitted.)

### 2. Analysis

Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid. Code, § 210.)  All relevant evidence is admissible.  (Evid. Code, § 351.)

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352.)  "'We have described the "prejudice" referred to in Evidence Code section 352 as characterizing evidence that uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues.'"  (*People v. Thomas* (2012) 53 Cal.4th 771, 807.)

15

'"A trial court has "considerable discretion" in determining the relevance of evidence. [Citation.] Similarly, the court has broad discretion under Evidence Code section 352 to exclude even relevant evidence if it determines the probative value of the evidence is substantially outweighed by its possible prejudicial effects. [Citation.] An appellate court reviews a court's rulings regarding relevancy and admissibility under Evidence Code section 352 for abuse of discretion. [Citation.] We will not reverse a court's ruling on such matters unless it is shown "'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]"' [Citation.]" (*People v. Jones* (2017) 3 Cal.5th 583, 609.)

The trial court did not abuse its discretion in admitting evidence of the Back in Black song lyrics. The lyrics, regardless of their author's intended meaning, tended in reason to establish defendant's motive for committing a series of violent crimes, including murder, against unrelated victims, over a period of three years. The lyrics also provided a plausible explanation for defendant's brazen and risky conduct, which included shooting at victims while riding a bike. Defendant told Officer Purece that Back in Black was his "go to" song. The song's lyrics include references that reasonably describe the perpetrator's conduct in this case—that is, the conduct of a serial killer dressed in black ("Yes, I'm back in black"), who enjoyed having power over and inflicting gun violence on others ("Don't try to push your luck, just get out of my way," "Number one with a bullet, I'm a power pack," and "Abusin' every one of them and running wild"), and who committed numerous crimes in a manner that risked apprehension ("Forget the hearse 'cause I never die," and "I got

16

nine lives"; "And I'm beatin' the flack," and "Nobody's gonna get me on another rap").

The potential prejudice of such evidence was also minimal. The song was extremely popular. Indeed, as of 2010, the album Back in Black had sold an estimated 50 million copies worldwide ("AC/DC, "Back in Black" (Great Moments in Pop Music History)", Encyclopædia Britannica, Inc., preserved from the original on Aug. 14, 2014 <https://web.archive.org/web/20140821051008/https://www.britannica.com/blogs/2010/08/acdc-back-in-black-great-moments-in-pop-music-history/> [as of May 21, 2024], archived at <https://perma.cc/H3BT-B73R>) and the video of the song has been viewed more than 1 billion times on YouTube (AC/DC 'Back in Black' Video Tops 1 Billion YouTube Views <https://variety.com/2024/digital/news/ac-dc-back-in-black-1-billion-youtube-views-1235893068/> [as of May 21, 2024], archived at < https://perma.cc/H9VZ-FSM2>). Thus, a reasonable juror would understand that many people who were not murderers enjoyed the song. Moreover, the introduction of the lyrics did not "uniquely tend[ ] to evoke an emotional bias against" defendant. (*People v. Thomas, supra*, 53 Cal.4th at p. 807.) These lyrics were not particularly graphic or violent, especially when measured against some contemporary music. (Cf. *People v. Coneal* (2019) 41 Cal.App.5th 951, 970 ["'So we left 'em bloody like a raw steak'; "'Slip up on that man and left his thoughts where his lap is'"; "'Bullets in his head./Eyes still open but his body is still tweakin'".)

C.    *Prosecutorial Misconduct*

Defendant argues the prosecutor's closing argument "relied heavily on a theme that dehumanized [him] and potentially played into implicit racial bias and fear." Defendant did not object to the prosecutor's argument and thus forfeited this argument on appeal.

1.    <u>Background</u>

We set forth the prosecutor's statements that defendant objects to in context, italicizing the parts to which defendant objects:

"I'm sure it's a heavy feeling to think about how one person can wreak so much havoc throughout a community. And *it's been for us a very heavy burden to bear for the last several years, and we carried it through the system for several years*, and now we're going to turn that over to you . . . ."

"We know from listening to the victims in this case that this is [an] individual who *preyed on vulnerable victims. . . .* [¶] . . . He's looking for people who aren't necessarily paying attention, who feel comfortable in their surroundings, in their neighborhood, who are maybe parked at the curb on their cellphones, looking at something or text messages . . . ."

"As I also mentioned in a lot of these cases there was gratuitous violence. In other words, it went above and beyond the mere point of a robbery which shows us he had a motive or intention beyond that of just getting money or property from people because remember in most of these situations when he would harm these individuals, it was after, after he had already

18

been told 'No, I don't have anything' or in a situation where [one of the victims] hands over his wallet and . . . defendant turns to leave, and as he's leaving and casually walking away he turns around as the victims are fleeing, and he shoots at them. So he knows he had an intention that goes beyond mere robbery.

"So you have to think to yourself why does anybody, why would anybody go out with a loaded gun looking to shoot people over and over and over and over and over and over and over again? Because they *enjoy it*."

Explaining "deliberate," the prosecutor said, "That means that he had to make a decision to kill after weighing the pros and cons. That does not mean that at some point . . . defendant *sat in his filthy apartment* and took out a ledger and drew a line down the middle and wrote pros on the right, cons on the left. It's that he knew the consequences for his behavior resulted in potential loss of life. That's what he was intending when he loaded his gun, went out on his bike at night searching for victims, hunting for people to shoot."

Addressing deliberation and premeditation, the prosecutor said that defendant's motives for the crimes were "money," "[t]he other thing is, as we saw throughout, he *enjoys* instilling fear," and "obviously . . . the gratuitous violence because he *enjoys* it, *enjoys* maiming, hurting, killing people."

As to a victim who was with her sister and handed over her purse, defendant said, "'[R]un, bitches, or I'll kill you' because he's not done with them yet. He wants them dancing on a string for him because, again, *this is all for his entertainment, for his enjoyment*."

"So we've come to the conclusion. What you've seen and what I've talked to you about throughout . . . is . . . defendant who

19

is a *serial predator*, he's terrorized people. He's injured people. He's killed people at random. And for sport. For no other purpose. He's ambushed the victims in this case. He targeted innocent, vulnerable people. Sometimes for money, other times for no apparent reason except for his own amusement in order to maim and injure and kill people and cause destruction everywhere he went."

"So what you heard is that . . . *defendant basically is a street terrorist. He hates women and hates people* obviously of all races of all ages. He shows no remorse."[6]

"Again, premeditation, deliberation, intent to kill. And *hunts his victims.* They might as well have been deer out there. *It was hunting season* for four years *for. . . defendant.*"

"Ladies and gentlemen, this case is a brazen example of intent to kill for no reason at all, a brazen example of murder for no reason at all. Just nothing other than *the pure enjoyment of it.*"

2.    <u>Analysis</u>

As an initial matter, we do not condone the language the prosecutor used here. For instance, the reference to defendant's "filthy apartment" was not relevant to any issue at trial and arguably dehumanizing. Nonetheless, we conclude that defendant forfeited his argument on appeal. "[T]o preserve a claim of prosecutorial misconduct for appeal, a criminal

---

[6]    The prosecutor had earlier argued, defendant "used similar language over and over especially when it came to the women. He called them bitches. He called them whores. He called them dogs."

defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety. [Citation.] The lack of a timely objection and request for admonition will be excused only if either would have been futile or if an admonition would not have cured the harm. [Citation.]" (*People v. Hoyt* (2020) 8 Cal.5th 892, 942–943, internal quotation marks omitted.)

Defendant concedes he did not object to any of the prosecutor's challenged statements. He argues, however, that the failure to object is excused because the prosecutor's "racially loaded epithets and imagery of a Black serial hunter prowling the streets" were too prejudicial to be cured. Defendant's perfunctory argument is insufficient to show an admonition would not have cured any alleged harm. (*People v. Panah* (2005) 35 Cal.4th 395, 462 ["A defendant claiming that [the admonition] exception[] applies must find support for his or her claim in the record. [Citation.] The ritual incantation that an exception applies is not enough"]; see also *People v. Harrison* (2005) 35 Cal.4th 208, 244 ["A timely objection and request for admonition at the first sign of any purported misconduct might have curbed the vigor of the prosecutor's argument"].)[7]

Finally, defendant argues that if he forfeited this claim by failing to object to the prosecutor's alleged misconduct in the trial

---

[7]     We agree with defendant's contention that we have the discretion to review his claim of prosecutorial misconduct despite his failure to object in the trial court. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) We decline to exercise that discretion here as there is nothing about the alleged misconduct in this case that warrants appellate review despite defendant's forfeiture.

court, then defense counsel provided ineffective assistance of counsel.

"A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel. [Citations.]" (*People v. Wang* (2020) 46 Cal.App.5th 1055, 1088, internal quotation marks omitted.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding. [Citations.]" (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

The record is silent as to trial counsel's reasons, if any, for failing to object to the prosecutor's closing arguments. There are, however, some probable explanations for counsel's failure to object. Counsel may have concluded that the prosecutor's challenged statements regarding defendant's enjoyment in shooting and "hunting" his victims was a fair comment on the evidence at trial which demonstrated that he shot or shot at numerous people and he followed Federico Lizarraga and Maria Galido before shooting at them (we set forth the facts of that shooting below in our discussion of defendant's section 654 error claim) (*People v. Harrison, supra*, 35 Cal.4th 208 at pp. 243–245) and did not concern defendant's race. As to the irrelevant reference to defendant sitting in his "filthy" apartment, defense

22

counsel may have reasonably concluded that this single reference in what the prosecutor described as an hours long closing argument—the transcript for which is 87 pages long—was not probative of guilt and an objection to the comment would unnecessarily suggest that it was. (*People v. Milner* (1988) 45 Cal.3d 227, 245 [finding no ineffective assistance of counsel where, "[e]ven if one or more of the statements were improper, none of them took up more than a few lines of the prosecutor's lengthy closing argument [and] [d]efense counsel would therefore have been well within the bounds of reasonable competence had he chosen to ignore the statements rather than draw attention to them with an objection"], disapproved on another ground in *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13.) Accordingly, we reject defendant's ineffective assistance of counsel argument. (*People v. Mai, supra*, 57 Cal.4th at p. 1009.)

D.     *Cumulative Error*

Defendant next contends that even if the prejudicial effect of the admission of evidence of the song lyrics or the prosecutor's alleged misconduct in closing argument individually did not warrant reversal, their combined prejudicial effect deprived him of a fair trial. We have found no series of errors. Therefore, we reject defendant's contention the cumulative effect of the errors requires reversal. (*People v. Melendez* (2016) 2 Cal.5th 1, 33.)

E.     *Section 654*

Defendant argues we must remand this matter for resentencing because the trial court failed to stay punishment on

certain counts under section 654.  The Attorney General agrees, as do we.

Section 654, subdivision (a) provides, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  Section 654's "reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective.  [Citations.]"  (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

### 1. January 8, 2013, Offenses (Lizarraga and Galindo)

Lizarraga and his wife Galindo operated an ice cream truck business.  At about 7:00 p.m., on January 8, 2013, they were in their ice cream truck on West 42nd Place.  Defendant was nearby on a bicycle.

Defendant followed and passed Lizarraga and Galindo's truck.  Defendant then stopped his bicycle and fired four or five shots at Lizarraga and Galindo.  Several rounds struck their truck, including the passenger side and the windshield.

As to this incident, the District Attorney of Los Angeles County (District Attorney) charged defendant with assault with a firearm on Galindo and Lizarraga (counts 49 and 50); shooting at an occupied motor vehicle (count 51); and the willful, deliberate, and premeditated attempted murders of Lizarraga and Galindo (counts 52 and 53).  The jury convicted defendant as charged.

The trial court sentenced defendant to 35 years to life on each of the assault with a firearm convictions, staying imposition

pursuant to section 654; 25 years to life on the shooting at an occupied motor vehicle convictions; and 45 years to life on each of the attempted murder convictions[8]. Under section 654, defendant could not be punished for both attempted murder and shooting at an occupied vehicle. (*People v. Sok* (2010) 181 Cal.App.4th 88, 100 (*Sok*).) On remand, the court has discretion under section 654 whether to stay the shooting at an occupied motor vehicle sentence or one of the attempted murder sentences. (*People v. Renteria* (2023) 96 Cal.App.5th 1276, 1283 (*Renteria*).)

2.    January 8, 2013, Offenses (Reyes, Salinas, Jorge and Felipe Bravo)

As to the incident near Salinas's home set forth above, the District Attorney charged defendant with the willful, deliberate, and premeditated murder of Reyes (count 16); shooting at an occupied motor vehicle (count 19); and assault with a firearm on Salinas, Reyes, and Jorge and Felipe Bravo (counts 20–23). The jury convicted defendant as charged.

The trial court sentenced defendant to 50 years to life on the attempted murder conviction; 50 years to life on the shooting at an occupied motor vehicle conviction; and 35 years to life on each of the assault with a firearm convictions, staying imposition pursuant to section 654. Defendant could not be punished for both attempted murder and shooting at an occupied vehicle. (§ 654, subd. (a); *Sok, supra*, 181 Cal.App.4th at p. 100.) On remand, the court has discretion under section 654 in choosing

---

[8]    The court did not orally pronounce sentence on count 53. The court's sentence is reflected in the abstract of judgment.

25

which sentence to stay.  (*Renteria, supra*, 96 Cal.App.5th at p. 1283.)

3.  June 2, 2014, Offenses (Caleb John Kim and Grace Kim)

At about 9:30 p.m., on June 2, 2014, Grace Kim and her employer Caleb John Kim were parked in Caleb's car near 7th Street and Wilton Place.  Grace was driving and Caleb was in the front passenger seat.

A man hit the front passenger window with a gun and loudly said, "'Open the door.'"  Caleb told Grace to leave and she accelerated quickly.  As she drove away, Grace heard more than two gunshots.  A bullet passed through the front passenger window.

A nearby resident heard two gunshots and looked out her window toward the street.  She saw defendant riding a bicycle.

As to this incident, the District Attorney charged defendant with the willful, deliberate, and premeditated attempted murders of Caleb and Grace (counts 36 and 37); shooting at an occupied motor vehicle (count 38); and assault with a firearm on Caleb and Grace (counts 39 and 40).  The jury convicted defendant as charged.

The trial court sentenced defendant to 45 years to life on each of the attempted murder convictions; 25 years to life on the shooting at an occupied motor vehicle conviction; and 35 years to life on each of the assault with a firearm convictions, staying imposition pursuant to section 654.  Defendant could not be punished for both the attempted murders and shooting at an occupied vehicle.  (§ 654, subd. (a); *Sok, supra*, 181 Cal.App.4th at

26

p. 100.)  On remand, the court has discretion under section 654 whether to stay the shooting at an occupied motor vehicle sentence or one of the attempted murder sentences.  (*Renteria, supra*, 96 Cal.App.5th at p. 1283.)

    4.    <u>November 1, 2014, Offenses (Piza)</u>

As to the incident near Piza's home set forth above, the District Attorney charged defendant with the willful, deliberate, and premeditated attempted murder of Piza (count 44); shooting at an occupied motor vehicle (count 45); and second degree robbery (count 46).  The jury convicted defendant as charged.

The trial court sentenced defendant to 45 years to life on the attempted murder conviction; 25 years to life on the shooting at an occupied motor vehicle conviction; and 45 years to life on the second degree robbery conviction.  Defendant can be sentenced for only one of these convictions.  (§ 654, subd. (a); *People v. Corpening, supra*, 2 Cal.5th at p. 311 [section 654 applied to "a course of conduct encompassing several acts pursued with a single objective"]; *Sok, supra*, 181 Cal.App.4th at p. 100; *People v. Lowe* (1975) 45 Cal.App.3d 792, 795 ["A series of criminal acts with the objective of robbery which results in both a robbery and . . . [an] attempted murder of the same victim is within the rule of . . . section 654"].)  On remand, the court has discretion under section 654 in choosing which sentences to stay.  (*Renteria, supra*, 96 Cal.App.5th at p. 1283.)

F.	*Defendant's Concurrent 25-Years-to-Life Sentence on His Conviction for Possession of a Firearm by a Felon*

In count 55, the jury convicted defendant of possession of a firearm by a felon.  The trial court sentenced defendant to a concurrent term of 25 years to life.  Defendant contends the court erred in sentencing him to 25 years to life because the offense of possession of a firearm by a felon is not a serious or violent felony and the prosecution did not plead and prove he was armed with a firearm during the commission of that offense.[9]  The court did not err.

Section 667, subdivision (e)(2)(C)(iii) provides:

"(C)  If a defendant has two or more prior serious or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a serious or violent felony as defined in subdivision (d), the defendant shall be sentenced pursuant to paragraph (1) of subdivision (e)[10] unless the

_____

[9]	In his reply brief, defendant notes that he and the Attorney General disagree on the total of the aggregate unstayed sentence the court imposed.  As we are remanding for resentencing, defendant may address the matter in the trial court as part of his resentencing.

[10]	Subdivision (e)(1) provides:
"(e)  For purposes of subdivisions (b) to (i), inclusive, and in addition to any other enhancement or punishment provisions that apply, the following apply if a defendant has one or more prior serious or violent felony convictions:
"(1)  If a defendant has one prior serious or violent felony conviction as defined in subdivision (d) that has been pled and

prosecution pleads and proves any of the following: [¶] . . . [¶] (iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person."

"A conviction of possession of a firearm by a felon is neither a serious nor a violent felony. [Citations.] A defendant is therefore eligible for resentencing on such a conviction under the [Three Strikes Reform Act of 2012] unless, during commission of the current offense, the defendant was armed with a firearm. [Citations.] Stated otherwise, a defendant is ineligible for resentencing if he was armed with a firearm during the unlawful possession of that firearm. [Citation.]" (*People v. Byers* (2020) 53 Cal.App.5th 1106, 1110.)

"'[A]rmed with a firearm' has been statutorily defined and judicially construed to mean having a firearm available for use, either offensively or defensively. [Citations.]" (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1029, disapproved on another ground in *People v. Frierson* (2017) 4 Cal.5th 225, 240, fn. 8.) "The California Supreme Court has explained that ""'[i]t is the availability—the ready access—of the weapon that constitutes arming.'" [Citations.]" (*People v. White* (2014) 223 Cal.App.4th 512, 524.)

The prosecution pleaded and the jury found true the allegation that defendant shot at or shot and struck multiple victims with a firearm. Thus, defendant was armed with a firearm while committing the offense of possession of a firearm by a felon. (*People v. Byers, supra*, 53 Cal.App.5th at p. 1110; *People*

proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction."

29

*v. Osuna, supra*, 225 Cal.App.4th at p. 1029; *People v. White, supra*, 223 Cal.App.4th at p. 524.)

G.  *Defendant's Pre-Sentence Conduct Credit*

The trial court awarded defendant 335 days of presentence conduct credit.  The Attorney General argues defendant was not eligible for presentence conduct credit because he was convicted of murder.  Defendant agrees, as do we.

A defendant convicted of murder is not entitled to presentence conduct credit.  (§ 2933.2, subd. (a); *People v. Chism* (2014) 58 Cal.4th 1266, 1336 ["Subdivision (a) of section 2933.2 prohibits any person convicted of murder from accruing any presentence conduct or worktime credit"].)  Defendant was convicted of two counts of murder and thus was ineligible for presentence conduct credit.

## III.   DISPOSITION

The judgment is affirmed.  The matter is remanded for resentencing as stated above.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

MOOR, Acting P. J.

LEE, J.*

---

\*      Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

31